## Paull et al. *versus* Oliphant.

1. The act of 21st April, 1846, relating to equitable actions of ejectment to enforce the payment of purchase-money, limiting a vendee to one ejectment, applies only to actions *founded on the contract;* and the act does not apply where the purchase-money has been paid by the vendee before he institutes an action of ejectment.

2. ·*Query :* Whether an award of arbitrators is equivalent to the verdict of a jury under that act?

3. Whether the record of an action of ejectment is conclusive, under the act of 1846, must be judged of from the record alone. If not, on its face, such a conditional verdict as the act requires, the omission cannot be aided by parol evidence.

4. Where a record was received in evidence for one purpose, it will not be allowed in this court a different quality, not asked for it in the court below.

5. Where, after the institution of an action of ejectment by a vendor, to enforce the payment of purchase-money and judgment therein, a person, in contemplation of becoming trustee for creditors of the vendee, pays the purchase-money and acquires the legal title, he cannot afterwards set up that title to defeat the trust.

ERROR to the Common Pleas of *Fayette county.*

This was an action of ejectment, brought to December term, 1847, by E. B. Oliphant *vs.* James Paull and others, to recover the possession of a lot of ground, in New Haven, Fayette county, containing about one acre, on which is erected a woollen factory, &c. It consisted of *four* contiguous town lots. To *two* of the lots one Foster had the legal title; in the other *two*, Nos. 11 and 12, he had only an equitable title, under an article of agreement with Rogers, executor of the will of Isaac Meason, deceased, to whom about $600 or $700 of purchase-money was due.

The plaintiff below (Oliphant) claimed under a sheriff's deed to him, acknowledged October 21, 1847, for all the title, estate, &c., *of Blocher, Shoemaker & Taylor,* sold on a judgment entered *January* 26, 1843.

In the spring of 1842, Foster being embarrassed by judgments and executions, all his estates were about to be sold by the sheriff.

It appeared by the evidence, that, after considerable negotiation, an arrangement was made, or supposed to have been made, between Judge Ewing and other creditors of Foster, on the one part, and a company of persons, of whom were *Blocher, Shoemaker & Taylor,* (whose title the plaintiff below claimed as sheriff's vendee,) on the other part; by which a sheriff's sale was to be made of all Foster's titles to real estate, and that it should be bought in by and conveyed by the sheriff to James Veech, Esq., who was afterwards to convey said titles to said Blocher, Shoemaker & Taylor, upon certain terms. What these terms were was one of the matters in controversy.

[Paull et al. *v.* Oliphant.]

These negotiations all took place between May and the 13th July, 1842, when a sheriff's sale was made of the property in dispute, (*cum alia*,) and conveyed by the sheriff, in September following, to James Veech, Esq., his heirs and assigns, in the usual form of sheriffs' deeds, for less than $30,000. It was alleged, on the part of defendant in error, that Veech was to purchase the property for a company, viz., Blocher and others. After the sheriff's sale, Blocher, Shoemaker & Taylor got possession of the property; and, on the 2d December, they executed a mortgage and *bond* for the amount of Judge Ewing's liabilities; and on the same day they executed other judgment bonds to secure others of those liabilities, one of which was to N. Ewing, for about $322, on which the trust property in dispute was afterwards sold to Oliphant. It was alleged that whether this bond to N. Ewing was for one of the class called Judge Ewing's liabilities, was disputed. It was, however, one of the Foster debts, which entered into the aggregate sum which Blocher, Shoemaker & Taylor were to pay for the realty.

By the plaintiff below, it was contended, that in this arrangement and purchase by Mr. Veech, he was the mere agent of Blocher, Shoemaker & Taylor, and bought for them alone; and that he was to convey to them, whenever they paid, or satisfactorily secured, such debts of Foster, *as Judge Ewing was concerned in*, not to exceed $30,000. That these debts really amounted to only about $28,000.

By the defendant below, (James Paull,) who held under deeds from Mr. Veech and Daniel Rogers, executor of Isaac Meason, it was contended, that Blocher, Shoemaker & Taylor agreed to pay *for Foster's titles alone*, the full sum of $30,000; which was to be appropriated to pay,—1st, the debts of Foster, wherein Judge Ewing was concerned, (for the greater part of which, judgments, &c., exceeding the probable amount of a sheriff's sale, were the earliest liens;) and 2d, to pay the residue of the $30,000 to certain other creditors of Foster; and that Mr. Veech was to retain the sheriff's titles until the $30,000 were so paid or secured, and then to convey to Blocher, Shoemaker & Taylor. In other words, that Veech was not to convey to the company until they paid or secured $30,000.

To *March term*, 1843, Daniel Rogers, surviving executor of Isaac Meason, deceased, brought an *ejectment* against Blocher, Shoemaker, Taylor, and Veech, for two of the four lots composing the property in dispute. Veech appeared and disclaimed possession; and, on the 25th November, 1843, judgment was obtained *on an award* for plaintiff, against defendants, to be released on payment of $698.99, on or before the 1st of April next. *Hab. fac. poss.* to September term, 1844: returned, "Executed this writ by giving Daniel Rogers possession of the within described property."

[Paull et al. *v.* Oliphant.]

Blocher and others not paying, an ejectment was brought, by creditors of Foster, who were interested, *in the name of Veech,* against Blocher, Shoemaker & Taylor, who were in possession, to December term, 1843; and it is stated on the record, "June 26, 1844. Judgment by consent for plaintiff,—for conditions, see paper filed." But no paper was filed. *Hab. facias poss.* to June term, 1846; on which, by Veech's direction, possession was delivered *to James Paull, to whom he had, October* 4, 1845, *assigned his title;* Paull having paid the residue of what Veech held the title to secure. As to this paper, parol proof was given that it was a statement of the amount, (about $7000,) upon payment of which by defendants, Blocher, Shoemaker & Taylor, within one year, the judgment was to be released. A few days *before* the conveyance of Veech to Paull, the latter took a conveyance from the executor of the will of Meason. The conveyance is dated 4th October, 1845. Afterwards, *Blocher, Shoemaker & Taylor,* claiming that they had complied with their agreement with Judge Ewing, and that the trust, under which Mr. Veech held, was terminated, *brought ejectment* to March term, 1847, against Paull and Gillis his tenant, for the property, to enforce the trust. Before it was tried, the property in question in that ejectment, and in this one, was sold at sheriff's sale, on 17th June, 1847, on a judgment against Blocher, Shoemaker & Taylor, entered on 26th January, 1843, on the bond given to Judge Ewing, for about $322. The judgment on that bond was assigned by N. Ewing to Mr. Howell before the issuing of process upon it to sell. The property was purchased in the name of Oliphant, plaintiff in this suit. The ejectment under consideration, in the name of Oliphant *vs.* Paull and Gillis his tenant, was afterwards brought to recover possession under the sheriff's deed. It was alleged that Paull was present at the sale, and that no notice was given on the part of Paull, or other person, of any claim to it. The deed to Oliphant was not acknowledged till October 21, 1847. *After this sale,* the ejectment brought by Blocher and others *vs.* Paull, above referred to, was tried, and, September 30, 1847, verdict for plaintiffs, subject to payment *to defendant, Paull,* of $8500, with interest and costs, within thirty-six months, Paull to file deed; which was done. Deed dated October 22, 1847. February 18, 1848. Judgment on verdict.

It was alleged, on part of defendant in error, Oliphant, that on the trial, the defendants, Paull and others, admitted that Paull held in trust; but the defence was set up that Blocher & Co. had not complied with their agreement with Judge Ewing, and were not entitled to possession. It was further alleged, on the part of Oliphant, that Blocher and others had fully complied with their agreement, and received their deeds; and it was further contended, that if they had not complied, the property was discharged from

[Paull et al. *v.* Oliphant.]

the trust, by the sale on a judgment, given for money, which the trust was held to secure.

Before the institution of the ejectment by Blocher and others against Paull, a tender was made by Blocher to Paull, of the amount of purchase-money paid by him to Meason's executor, but it was refused; and $1000, the amount paid by Paull for the Rogers title, was paid into court Feb. 18, 1848, in that suit.

Oliphant claimed to recover, on paying the balance of purchase-money paid to the estate of Meason.

For Paull, it was contended, that Oliphant could not recover at all, that part of the ground which belonged to Meason; that, *as to that*, he was concluded by the act of 21st April, 1846, the amount of purchase-money not having been paid *in the time limited by the award;* and that he could not recover *any part* without paying the whole balance claimed, amounting to about $8500, at the time of the trial.   See verdict in the ejectment by Blocher and others against Paull and Gillis.

On the trial, the defendant's counsel asked the court to instruct the jury—

That an action of ejectment having been brought by Daniel Rogers, executor of Isaac Meason, deceased, against Samuel Blocher, Isaac Shoemaker, and Joseph R. Taylor, to No. 135, March term, 1843, to enforce the payment of purchase-money *of the two lots,* Nos. 11 & 12, embraced in this suit, wherein judgment was obtained by the plaintiff on the 25th November, 1843, to be released on the payment of $698.99, on the first of April then next following, and wherein also the said sum, not being paid, an *hab. fac.* was issued and possession delivered to the said plaintiff,—and an action of ejectment having afterwards been brought to 92 of March term, 1847, by the same *defendants,* against James Paull, in whom the title of the said Isaac Meason was then vested, to recover possession of the said two lots, in which action a judgment was rendered for the plaintiffs, upon condition that they pay to the said James Paull, defendant, the sum of $8500 and costs, within thirty-six months, with interest from date, that, therefore, this suit cannot be maintained, so far as *those two lots are concerned,* and for them the jury must find a verdict for the defendants absolutely—the defendants in that Rogers judgment, having had their action as given to them by the act of 21st April, 1846, which gives but *one* such action: and that plaintiff's payment into court of the consideration of that Rogers title is unavailing.

This point was thus answered by the court:

HEPBURN, J.—The executor of Isaac Meason, recovered in ejectment by the award of arbitrators, on the 25th of November, 1843, two of the lots in controversy, from Blocher & Co., whose title the plaintiff now holds, to be released on the payment of $698.99 on the 1st of April then next, (1844.)   In the fall of

[Paull et al. *v.* Oliphant.]

1845, Blucher tendered to James Paull, who then held the title of Meason's executor, $770 in payment of this award. To March term, 1847, Blocher *et al.* brought ejectment against Paull for the said two lots, together with other real estate, in which judgment was entered for plaintiffs, on condition that they pay to the said Paull the sum of $8500 within thirty-six months. Is this recovery conclusive under the provisions of the act of 21st April, 1846 ?

Mr. Paull took this title from Meason's executor, a few days before the conveyance of Mr. Veech to him, by which, he contends, and the court have so held, that he took upon himself the trusts under which Mr. Veech held the title. If done, then, in contemplation of becoming the trustee, he could do nothing to impair the trust; but in that view he was right in doing any thing to support the trust and the furtherance of it.

Under these circumstances, he cannot avail himself of the payment to Meason's executor, or of the title derived from him, to defeat the trust and appropriate the trust property to his own use. Nor can he by that title prevent the *cestui que* trusts from asserting their rights on refunding the money. The money was tendered to Paull previous to the ejectment of 1847, and, since the present suit was brought, the money was paid into court. Under these circumstances, I do not think that the former recovery is conclusive, but that the title remains in Mr. Paull as trustee, and subject to the plaintiff's claim. Also, Blocher stands in the position of one who has paid the money, and the act in question does not say that the party who has paid the money shall have but one action of ejectment to enforce his contract. This point is answered in the negative.

To this part of the charge of the court the defendant's counsel excepted.

Verdict was rendered for plaintiff.

Errors assigned :

The court erred in answer to the prayer by plaintiffs in error for instructions to the jury—

1st. In assuming that the Rogers title had any *connection* with the trust under which Veech held the sheriff's title; or that the Rogers title was acquired by Paull with a view to support the trust, or in furtherance of it.

2d. In not giving the instructions prayed for

3d. The court erred in assuming that the defendant below (Paull) was a trustee for the purchasers, in a sense different from that in which every vendor is a trustee for his purchaser.

4th. In charging that the ejectment of Blocher and others *vs.* Paull and others, No. 92 of March term, 1847, was no bar to this suit.

5th. It is evident upon the whole record that the plaintiff below is not entitled to recover, because, without reference to the suit of

[Paull et al. *v.* Oliphant.]

Meason's executor and the proceedings under it, it appears that, to December term, 1843, the Foster creditors, the vendors of Blocher and others, brought an ejectment in the name of James Veech, Esq., *vs.* Blocher and others, the purchasers, and recovered a judgment, to be released on the payment, in one year, of $7000, which not being paid within the time, possession was delivered under a *hab. facias ;*—and that subsequently, by virtue of the act of the 21st April, 1846, Blocher and others brought their action, No. 92, March term, 1847, *vs.* James Paull, who then held the title of Mr. Veech, and had paid all the other creditors of Foster, for whose use Mr. Veech held the title.

For this reason, this court should reverse, although the point was not made below : Hoffer *v.* Wightman, 5 *Watts* 205. "If it appears by the record that the plaintiff has no cause of action, this court will reverse judgment in his favor, although the point may not have been made in the court below, or assigned for error."

The court is also referred to the act of 21st April, 1846, relating to "equitable actions of ejectment," &c. *Dunlop's Digest,* (1st edition,) page 969.

The case was argued by *N. Ewing,* for plaintiffs in error.—Paull purchased the interest of Ewing and others of the creditors of Foster who were interested in the property, and Veech, by direction, conveyed to him the legal title. That if it had not been for the act of the 5th May, 1841, which enacted that one judgment in ejectment should *not* be conclusive, the recovery by Veech, and conveyance to Paul, would have been conclusive. That act was altered by the act of 21st April, 1846, under which Blocher and others were authorized to bring ejectment against Paull, within two years. Ejectment was brought and judgment recovered, conditioned for payment to Paull of $8500 within thirty-six months. That afterward, the title of Blocher and others was conveyed to Oliphant, who tendered only the amount due to Meason's estate. That as Blocher and others were entitled to receive the legal title on payment of $7000 and interest, he had an interest which could be sold; and this was sold to Oliphant. That Paull is willing that Oliphant should have the legal title on payment of $8500, notwithstanding the two years have elapsed; but that Oliphant cannot recover without paying that amount. He offered to pay only the amount due to Meason's estate.

*Patterson* for defendant in error, alleged that the object of offering the judgment in the ejectment in favor of Blocher and others was to impeach witnesses of plaintiff, and to show that defendant *was in possession ;* and not as a bar to plaintiff's recovery. That that ejectment was not by a *vendor.* That Veech held merely in trust; that his title was in the nature of a *mortgage,* and

[Paull et al. *v.* Oliphant.]

was divested by the sheriff's sale. That the *award*, in the case of the ejectment by Meason's executor, was not a judgment on *verdict;* and was not such a judgment as to which time is essential, under the act of 21st April, 1846.

The opinion of the court was delivered by

BELL, J.—Upon the argument of this cause, many facts were verbally introduced by the counsel on both sides, rather with the effect of confusing than elucidating the points at issue. I do not, therefore, propose to notice them, except so far as they may be suggested by the record brought up, and are connected with the questions presented for discussion.

This action was brought by Oliphant, the plaintiff below, as purchaser of the land in dispute, at a sheriff's sale, made by virtue of an execution issued *sur* one of the judgments confessed by Blocher, Shoemaker, and Taylor, to secure certain liabilities incurred by Thomas Foster, and for which Judge Ewing, and perhaps others, had become responsible as sureties. The title of the plaintiff below would, therefore, seem to be paramount to the trust created to secure the payment of those liabilities, and which was represented by Veech, the holder of the legal title, subject to the trust, and afterwards by Paul, the defendant below, by a conveyance from Veech, under similar conditions. On the trial of the cause, this relation to the land, and the parties interested in it, was established by all the evidence; and the court, in the view taken of the controversy, recognise Paull's character of trustee, and allow him every benefit to be derived from it. It seems the question principally debated between the litigants, was whether Blocher, Shoemaker, and Taylor had fulfilled their agreement with Ewing, as a security for which Veech held the legal title, and from whom Paull had received the proper conveyance of that title. Upon this issue there was a general verdict for the plaintiff below; but the court having granted a new trial, upon the second contest, the defendants set up an additional defence, which, however, went to but a part of the land in dispute. To a comprehension of this part of the case, a brief recapitulation of facts is necessary.

Two of the lots of land included in this ejectment had been purchased by Thomas Foster from a certain Isaac Meason.

As part of the purchase-money remained unpaid, no formal conveyance of the lots was executed; the vendor retaining the legal title as security for payment, though the vendee was permitted to enter upon and enjoy the land. Pending this condition of things, Foster's estate was sold by the sheriff, and conveyed to Veech, subject to the trust at which I have already glanced; and in pursuance of it, Blocher, Shoemaker and Taylor, *as cestui que trusts*, immediately entered upon the beneficial possession of the property. After this, in March, 1843, Meason, the vendor, having

died, his executor instituted against the last-named tenants an action of ejectment for the two lots sold to Foster by his testator; the object of which was to enforce payment of the purchase-money. In November of the same year, a judgment *sur* award of arbitrators was recovered by the plaintiff in this action, to be released on payment of $698.99 purchase-money, on or before the first of April then next. This condition being unfulfilled, an *habere facias* issued to September term, 1844, under which Rogers, the then plaintiff, was put into actual possession of the lots.

About a year after this, viz. on the 4th October, 1845, Veech, as already intimated, conveyed all the property which had been Foster's, to Paull as trustee. The latter, in order to perfect a title in the two lots, had paid to Rogers, the executor, the balance of the purchase-money ascertained by the award, and taken a conveyance of the legal title. He thus became the legal holder of all the estate sold as Foster's by the sheriff. But, prior to this, in December, 1843, Veech had instituted an action of ejectment against Blocher, Shoemaker, and Taylor, who were then in possession of all the property. In June, 1844, this action was determined by the following entry upon the record: "Judgment, by consent, for plaintiff—for conditions, see paper filed." No such paper as is here referred to was ever filed; nor are we furnished with any reliable evidence of its existence and contents. Under the judgment thus entered, an *habere facias* issued to June term, 1846, by virtue of which Paull, who then had the legal title, was put into possession by Veech's direction. Subsequently to this, in March, 1847, Blocher, Shoemaker, and Taylor, averring they had performed all that was necessary under their agreement with Judge Ewing to attract the legal title, instituted an action of ejectment against Paull, in which they claimed to recover all the property that had belonged to Foster. Pending this action, the execution already referred to, under which the plaintiff below purchased, was issued, and the property sold to him on the 17th June, 1847, the sheriff's deed being acknowledged on the 21st October in the same year. Less than a month before the latter date, the last-mentioned ejectment came on to be tried, and resulted in a verdict for the plaintiffs, subject, however, to the payment to Paull, the defendant, of $8500, with interest and costs, within thirty-six months.

Before the bringing of the ejectment by Blocher, there was tendered to Paull, the defendant, the purchase-money paid by the latter to Meason's executor. It was refused, and, after this suit brought, was paid into court. On the trial, the defendants prayed the court to instruct the jury, as was submitted in their propounded point, brought up with the record. This proposition states the partial defence, of which I have before spoken, and the answer returned to it by the court is the only subject for investigation

2 E

[Paull et al. *v.* Oliphant.]

properly before us. It relates, exclusively, to the two lots purchased from Meason, and presents the question whether the two ejectments, mentioned in the point submitted, can, under the act of 21st April, 1846, operate to bar the plaintiff below from maintaining the present action. This inquiry was properly answered in the negative. Were it even admitted that an award of arbitrators is within the purview of the act of 1846,—a position I am not called on to discuss at present,—it is beyond all dispute, that, as Paull ·acquired title as a trustee, standing in Veech's place, after the recovery in the ejectment brought by Meason's executor, he cannot set up that judgment to defeat the trust. All that he did must be taken as in furtherance of the trust. To this he was bound by the duties of his office; and it would be strange, indeed, if he could wrest the judgment recovered by Rogers, into an instrument of attack upon the interests he undertook to subserve, and for the protection of which he must be taken as having procured the conveyance of Meason's title. That conveyance put an end to any legal consequence which otherwise might have flowed from the judgment recovered. Besides, as the court below very properly observed, Blocher and his fellows stood in the position of parties who had paid the sum ascertained by the award; and the statute in question does not say that he who has satisfied the condition shall have but one action of ejectment upon a contract. But to vest the judgment of which we have been speaking with any conclusive effect, it is necessary to connect it with some subsequent action of ejectment, brought by the defendants to enforce the contract, which was the foundation of the first action. The language of the act is, " that it shall be lawful for any such defendant, within two years after the passage of the act, to commence an action, and therein enforce his contract in such case, on paying the amount of purchase-money, interest, and costs," &c., " to be paid within such reasonable time, as may be fixed by the jury under the direction of the court; and if not paid within such time, such failure to pay shall operate as an absolute rescission of the contract," &c. As satisfying this provision, the defendant refers to the judgment rendered in the ejectment brought by Blocher, Shoemaker and Taylor against Paull, in 1847. The answer is, that *that* ejectment was not, in any degree, founded upon the contract made between Foster and Meason. It was brought to enforce the execution of the trust represented by Paull, in respect to all the lands which had been held by Foster, and the questions then agitated were, whether the plaintiffs had fulfilled their agreement with Judge Ewing, and thus entitled themselves to a legal conveyance.

I have, however, spent more time upon this part of the case than was, perhaps, called for. Indeed, the plaintiff in error, satisfied that it was destitute of merit, wholly abandoned it upon the argu-

[Paull et al. *v.* Oliphant.]

ment, and substituted for it a ground of defence not suggested on the trial. It is, that the judgment recovered in the action of eject-ment, instituted by Veech against Blocher and his associates, to December term, 1843, is conclusive against the present plaintiff, under the act of 1846. Several answers might be returned to this proposition, showing this action, as it is presented upon the record, is not within the purview of the statute, or, if it were, that it is in-competent to affect the rights of the now plaintiff. But, without enumerating these, it is sufficient to say the record of that action was not used on the trial, for any such purpose as is now claimed for it. It was specifically offered to impeach the testimony of Blocher and others of the plaintiff's witnesses, and to show that, under the *habere facias* then issued, the defendant, Paull, was put into possession of the lands, and Blocher, Shoemaker, and Taylor turned out. Under objection, it was admitted for this purpose, and this purpose alone. Yet, though this be so, it is said we may now ascribe to it an effect not claimed for it below, under the authority of Hoffer *v.* Wightman, 5 *Watts* 205, where it was held, that, if it appears by the record that the plaintiff has no cause of action, the court will reverse a judgment rendered in his favor, although the point may not have been considered in the court below, or assigned for error. In that instance, the feature of the case upon which the court relied was conclusive against the plain-tiff's right, and, upon his own showing, admitted of no answer. But how can we hazard the assertion, without danger of violent injustice, that the imperfect record of the judgment rendered in the ejectment now relied on admitted of no explanation? To invest it with the slightest force under the act of 1846, the de-fendant below was obliged to have recourse to parol proof, not, however, with the view now suggested, which was not then dreamed of. How can we say that, had it been, the plaintiff could have furnished no answer through the same medium of proof? It is, therefore, obviously not within the spirit of the decision cited, but falls within the reason of the numerous cases which forbids the introduction of new matter in error. We cannot, therefore, without infracting a well-settled rule, founded in the plainest pro-priety, concede to this judgment a quality not asked for it below. It might not be necessary to say more than this; but I cannot persuade myself to leave this point without observing, that, to ascertain the character of that judgment, we must look to the record of it alone. That shows not it is such a conditional judg-ment as is contemplated by the statute; and this omission cannot be aided by parol.

Judgment affirmed.