Marion Semple, Executrix of the last will and testament of William Semple, deceased, v. James D. Callery and William V. Callery, Executors of the last will and testament of James Callery, deceased, Appellants.

*Evidence—Competency of witness—Province of court and jury—Act of May 23, 1887, sec. 6.*

The competency of a witness, as to questions of both fact and law, is to be determined by the court.

Whether a release has been executed in good faith by one who is called as a witness under section 6, of the Act of May 23, 1887, P. L 158, is a question preliminary to the question of competency.

Where the court has passed upon the good faith of an assignment by which a witness has divested himself of all interest in the controversy, and has permitted him to testify, the question of the good faith of the assignment cannot subsequently be submitted to the jury.

*Statute of limitations—Fraud—Notice.*

Where the time for delivery of bonds under a contract of purchase was extended by agreement, and the seller was permitted to keep them in his possession, and he afterwards fraudulently converted them to his own use, the statute of limitations cannot be set up by him in an action to recover the value of the bonds, without showing that the buyer had notice of the fraud.

Argued Oct. 29, 1897. Appeal, No. 112, Oct. T., 1897, by James D. Callery et al., from judgment of C. P. No. 3, Allegheny Co., on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit to recover the value of ten bonds. Before KENNEDY, P. J.

The facts appear by the opinion of the Supreme Court, and by the charge of the court below which was as follows:

This action is brought by the executrix of William Semple, deceased, against the executors of James Callery, deceased, for the recovery of the value of ten bonds of the Pittsburg, Painesville & Fairport Railroad Company, which the plaintiff alleges William Semple purchased from James Callery and paid him for them, but that Callery failed to deliver them. The only direct oral testimony that we have of the contract for the purchase of the bonds, and the terms of the contract, is that of William Semple, Jr., the son of William Semple, deceased, and he states that in the early part of June, 1886, Mr. Callery came to his father's store in Allegheny, and there they agreed together that Mr. Semple should purchase from Mr. Callery thirty bonds, of $1,000 each, of this railroad company, and three hundred shares of the capital stock of the company, for the price or sum of $30,000. This contract, as I have stated, as indicated by Mr. Semple, was a verbal one, and he states that of the bonds purchased twenty were delivered. The whole of the capital stock was delivered in accordance with the terms of the purchase, but that Mr. Callery failed to deliver the remaining ten bonds of $1,000 each of this railroad company. As I have stated, the action is for the recovery of the value of those bonds. Mr. Semple, in relating the contract of purchase, and its terms, and the different conversations had between the two gentlemen,

says that some time after it was made, and the terms agreed
upon, Mr. Callery brought to their office twenty of the bonds
and delivered them to his father, Mr. Semple, and when asked
for the remaining ten bonds he said they were up as a pledge
for money borrowed, and he asked the favor of Mr. Semple that
they be allowed to remain temporarily in pledge, and to this Mr.
Semple assented upon Mr. Callery promising to deliver them
after the purpose of the pledge was accomplished. Mr. Semple
says that at interviews between the two gentlemen, subsequent
to this, the subject of the remaining ten bonds not yet delivered,
came up, notably after the maturity of the coupons, namely,
shortly after the 1st of January and July in each year. He
says that his father would ask Mr. Callery, when he came to
see him, about these bonds, and he stated they were still under
this pledge, and obtained Mr. Semple's assent to their remain-
ing so until the purpose of the pledge was accomplished, and
he would ask him at the same time in regard to the coupons
belonging to those bonds, and Mr. Callery would reply that they
were still attached to the bonds. These, in brief, gentlemen,
were the terms of the contract of purchase as claimed by the
plaintiff. Mr. Semple relates not only the conversations to
which I have referred as occurring shortly after the 1st of Jan-
uary and July in each year, after the contract was made, but
he refers also to another conversation which he says occurred
on the evening of April 4, 1889, the evening before Mr. Callery's
death, which occurred suddenly the next morning. He says at
that time Mr. Callery, in his father's store and in his presence,
said the bonds were still pledged, and promised to deliver them
shortly when the purpose of the pledge was accomplished. They
claim that they paid the whole of the purchase money for these
bonds and the stock, and having only received twenty of the
bonds they claim at your hands a verdict for the value of these
ten remaining bonds, which were, according to their claim, never
delivered. As I have said, the only direct testimony, as to the
contract and its terms, is that of William Semple. But the
plaintiff claims that he is corroborated by these notes and checks
and other documentary evidence, and other testimony here.
And he claims to have established this contract and their claim
to the value of these bonds at your hands.

The defense maintains that there was no such contract as

alleged here, and that William Semple, whose testimony with reference thereto I have adverted to, is not to be believed; that while there was perhaps this transaction with reference to bonds of this railroad company between the two gentlemen, yet Mr. Semple has received all to which he was entitled, and all that he paid for. They claim that these two gentlemen, as is shown by the testimony, were interested in a number of schemes or enterprises together, largely interested, and interested in enterprises that involved large amounts of money, and that there was a constant interchange of checks between them, and that all this array of checks which has been brought to your attentention here was in other transactions. They run over, as you will observe, a considerable period of time after, it is alleged, the contract was made between these two gentlemen. The defense alleges that they do not concern alone this transaction that is alleged to be made here, but that there were so many transactions between them that it is impossible for them to say now to which transaction each of these checks or notes belongs, but they do maintain that Mr. Semple has received all the bonds to which he was entitled, and that the testimony of William Semple is not to be taken by you as true. They call attention to inconsistencies and contradictions of Mr. Semple in the course of his testimony.

It seems, as I have stated, that the claim of the plaintiff is that this contract was not only made distinctly as stated in June, 1886, but that it was referred to frequently in the subsequent conversations and the acknowledgment of Mr. Callery to the fact that there were still these ten bonds coming, the matter running along from the time of the inception of the contract until the death of Mr. Callery, and Mr. Semple's death, which followed soon after. And they say further, that they had no knowledge that these bonds were not in pledge until a considerable length of time after the death of both Mr. Callery and Mr. Semple; that they did not know positively that the bonds had been taken out of pledge and finally disposed of, and the proceeds received by Mr. Callery, until some time in 1891.

It seems, by the testimony now in the case, that the bonds were finally sold. I do not refer to these bonds in particular, but all of the bonds to which Mr. Callery was entitled in this venture or enterprise of the Pittsburg, Painesville & Fairport

Railroad Company; it seems that they were disposed of and the proceeds credited to him in the latter part of August, 1888. The plaintiff claims that the purpose of the pledge was accomplished, and the bonds were then, according to the terms of the contract, the property of Mr. Semple, and he would have been entitled to bring action within six years from that date. They say, however, that they had no knowledge that the bonds were not still under this pledge, and received no such knowledge until 1891, and, therefore, the six years' statute did not begin to run against them until they received the knowledge that the bonds had been disposed of. I have mentioned contradictions which have been referred to by the defendants of Mr. Semple's testimony. One is with reference to this notice of the disposition of the bonds. He said that he did not know that the bonds were sold until 1891. A letter, however, was produced of his which is dated, I believe, in August, 1889, a short time after the death of his father, in which he states that Mr. Humphrey, the man who seems to have been at the head of the enterprise, had informed him that these bonds were sold and the proceeds credited to Mr. Callery.

The defense refers to this as a contradiction of Mr. Semple when he says he did not know that they were sold until 1891. And another contradiction of Mr. Semple which they refer to, relates to the conversation which he alleges occurred between his father and Mr. Callery on the evening of April 4, just the day before Mr. Callery's death. Mr. Semple says that Mr. Callery came to his store on the evening of that day, when the subject of these bonds was referred to, and Mr. Callery promised to deliver them after they were out of pledge. The defendants show by the colored man that Mr. Callery on that evening went home earlier than usual, and that he met him at the depot that evening between four and five o'clock, at the depot in East Liberty. Now, they claim this tends to show that Mr. Callery could not have been at Mr. Semple's place that evening at the time referred to, and that this conversation, they argue, could not have occurred as related by Mr. Semple. Now, gentlemen, the matter is for your determination. If you find that the contract was made here, as claimed by the plaintiff, for the delivery of these bonds, and that they were not delivered along with the other bonds, were not delivered for the reason given by Mr.

Callery, namely, that they were up as a pledge, and that he would deliver them when the purpose of that pledge was accomplished, and that Mr. Semple assented thereto, and that running contract was kept up until Mr. Callery's death, he promising to deliver them as soon as the purpose of the pledge was accomplished, if that all was assented to by Mr. Semple, then he could not bring suit until after the bonds were out of pledge. And if he did not know that they had been sold and the proceeds credited to Mr. Callery in 1888, then he was not bound to bring his action until after he had such knowledge, if the fact of their having been sold and disposed of by Mr. Callery, and the proceeds given to him, was concealed from him by Mr. Callery. If, I say, you find those facts to exist, then he was not bound to bring his suit until after he had been notified or informed in some way that the bonds were out of pledge, and the plaintiff is entitled to recover the value of those bonds. If, however, you find that there was no such contract as claimed by the plaintiff, that the testimony of Mr. Semple in that regard is not to be believed, and, as I have said to you, his is the only direct oral testimony that you have to establish the existence of this contract and its terms, then your verdict should be for the defendants generally. There were no specific transactions between the plaintiff and defendants offered in evidence by the defense to which these notes and checks could apply, while William Semple, Jr., testified they applied to this transaction.

Defendant's points and the answers thereto were as follows:

1. If the jury should find from the evidence that the assignment made by William Semple, Jr., to Francis M. Semple, of all his interest in his father's personal estate, was not made in good faith, but merely for the purpose of making the said William Semple, Jr., a competent witness in this action, then their verdict should be for the defendants. *Answer:* Refused. [1]

2. The original transaction, upon which the claim in this action is founded, having occurred in 1886, is barred by the statute of limitations, unless the bar of the statute is removed by a subsequent acknowledgment of James Callery at a time six years prior to the institution of this action. And the testimony in this case as to the acknowledgment of James Callery upon April 4, 1889, is not such a clear, distinct and unequivocal acknowledgment as under the law will remove the bar of the

statute of limitations, and the verdict of the jury should be for the defendants.  *Answer:* Refused. [2]

Verdict and judgment for plaintiff for $15,062.33.  Defendants appealed.

*Errors assigned* were (1, 2) above instructions, quoting them.

*George C. Wilson*, with him *Wm. D. Evans* and *M. W. Acheson, Jr.*, for appellants.—The good faith of the release, and the credibility of the witnesses called to support it, under all the evidence, whether offered by plaintiff or defendants, and in any view that may be taken of the case, was the vital fact which the jury was ultimately to determine: Act of May 23, 1887, sec. 6, P. L. 158.

The statute of limitations was a bar to the suit.

*Johns McCleave*, with him *D. T. Watson*, for appellee.—The competency of witnesses has always been determined by the court: Lyon v. Daniels & Williams, 14 Pa. 197.

Mr. Semple having consented that James Callery should retain the bonds under pledge, no right accrued to him to demand the bonds until the pledge was released, or, at least, until he had done something to revoke the arrangement: Turner v. Warren, 160 Pa. 336 ; Hughes v. Bank, 110 Pa. 429.

OPINION BY MR. JUSTICE FELL, January 3, 1898:

The court, at the time a witness was called, heard testimony on the question of the good faith of an assignment by which the witness had divested himself of all interest in the controversy, and permitted him to testify.  At the close of the testimony the court was requested to submit to the jury the same question on which it had passed, and to instruct them to disregard the testimony of the witness if they found that the assignment had not been made in good faith.  The 6th section of the Act of May 23, 1887, P. L. 158, provides that a person incompetent to testify as a witness because of interest may become fully competent " by a release or extinguishment, in good faith, of his interest, upon which good faith the trial judge shall pass as a preliminary question."  It was not intended by this provision to make the decision of the court subject to review by

the jury, and to change the long established rule of evidence that it is the province of the court finally to decide preliminary questions of fact upon which the admissibility of testimony depends. Whether a release has been executed in good faith is a question preliminary to the question of competency, and as such it is decided as a preliminary question, but its decision is not preliminary merely to a second decision by the jury. The competency of a witness, as to questions of both fact and law is to be determined by the court.

The remaining assignment relates to the refusal of the court to affirm the defendants' second point, and to direct the jury that there could be no recovery because of the bar of the statute of limitations. The transaction does not appear to have been closed so as to give a right of action more than six years before the bringing of the suit. The time of the delivery of the bonds was extended by agreement, and the seller was allowed to retain them to be used by him as collateral. This agreement remained in force until his death. The defendants cannot now take advantage of the fact that the bonds had not been used in accordance with the agreement, but had been improperly converted, without proof that the buyer had notice of the deception practiced: Hughes v. Bank, 110 Pa. 429.

The judgment is affirmed.