Estate of Hallie Linn Swaney. Appeal of Carmack.

Argued April 18, 1928.

Before Porter, P. J., Henderson, Trexler, Keller, Linn, Gawthrop and Cunningham, JJ.

*H. E.* and *H. S. Carmack*, for appellant, cited: Darragh v. Stevenson, 183 Pa. 403; Post v. Avery, 5 W. & S. 509; Leiper v. Peirce, 6 W. & S. 555; Wilder v. Gilderman, 55 Vt. 504; Swanzey v. Parker, 50 Pa. 443; Pennington Co. Bank v. State Bank of Moorehead, 125 N. W. 119.

*Joseph C. Spriggs,* and with him *Evans & Linn,* for appellee, cited: Smith v. Hay, 152 Pa. 377; Paschall v. Fels, 207 Pa. 71; Tioga County v. Township, 75 Pa. 433; Dickson v. McGraw, 151 Pa. 98; Walls v. Walls, 182 Pa. 226; Steele v. The Phoenix Ins. Co., 3 Binney 313; National Bank v. King, 57 Pa. 202; Reiff's Appeal, 124 Pa. 145.

218

OPINION BY CUNNINGHAM, J., July 12, 1928:

In decreeing distribution of the funds in the hands of the Union Trust Company as executor of the will of Hallie Linn Swaney, as shown by its first and final account, the learned President Judge of the Orphans' Court of Washington County, before making distribution to the several legatees named in the will, awarded to Charles F. Linn, in his own right and as assignee of Andrew M. Linn and George T. Linn, the sum of $4,000 as representing the corpus of a certain trust fund created by the will of Hannah L. Manown, the income of which had been payable to the said Hallie Linn Swaney during her life and the principal of which was alleged to have been in her hands at the date of her death, in trust for three of her cousins, George T. Linn, Andrew M. Linn and the said Charles F. Linn as remaindermen. Ida M. Carmack, residuary legatee under the will of decedent, denying upon various grounds hereinafter stated that Charles F. Linn was entitled to receive this fund, either as a cestui que trust or as a creditor, and alleging that it formed a part of the estate of the decedent and was distributable to the legatees named in her will, filed exceptions to the adjudication and decree of distribution. After due consideration by the auditing judge the exceptions were overruled for the reasons stated in his opinion and we now have her appeal.

The pivotal question involved under the assignments of error relates to the competency of Andrew M. Linn and George T. Linn to testify as witnesses in support of the claim of their brother, Charles F. Linn, for without their testimony this record would be barren of any evidence justifying the findings of the court below with relation to this claim. The question arose under these circumstances: Hannah L. Manown, who died May 18, 1906, by her will created three trust funds of $4,000 each—the income of one to be paid

to her nephew, Harry H. Linn, during his life, with remainder to his brothers, George T. Linn, Andrew M. Linn and Charles F. Linn; the income of another to be paid to her brother, George A. Linn, during his life, with remainder to his daughter, Hallie Linn Swaney, whose estate is now being distributed; and the income of the third to be paid to Hallie Linn Swaney during her life, with remainder to her cousins, the said George T. Linn, Andrew M. Linn and Charles F. Linn. The respective trust funds were bequeathed by Hannah L. Manown to her executors, George A. Linn, her brother, and George T. Linn and Andrew M. Linn, nephews, upon the trusts above mentioned.

We are concerned in this proceeding only with the third fund, of which the decedent was entitled to the income for life with remainder to George T. Linn, Andrew M. Linn and Charles F. Linn, and of which George A. Linn, George T. Linn and Andrew M. Linn were the trustees. In support of the contention that this fund of $4,000 was in the possession of Hallie Linn Swaney at the time of her death—that George T. Linn and Andrew M. Linn, two of the remainder-men, had assigned to their brother, Charles F. Linn, the third remainderman, their respective interests therein, so that he was entitled to receive the whole amount out of the assets of the estate of Hallie Linn Swaney, upon the theory that this fund did not prop-. erly belong to her estate—Andrew M. Linn and George T. Linn offered themselves as witnesses in the court below. They proposed to testify to the circumstances under which they had made the respective assignments of their interests in the fund to their brother, Charles F. Linn, and to certain family settlements and agreements and other facts tending to support the claim of Charles F. Linn for payment to him of the fund in advance of any distribution to legatees. Objection was made to their competency to so testify but their testimony was received under the objection

and exception of counsel for appellant, whose subsequent motion to strike out their testimony was denied. It was conceded that the claimant would have been clearly incompetent under clause (e) of section 5 of the Act of May 23, 1887, P. L. 158, but it was contended that, by virtue of the assignments executed by his brothers, Andrew M. Linn and George T. Linn, they became competent under section 6 reading: "Any person who is incompetent under clause (e) of section five by reason of interest, may nevertheless be called to testify against his interest, and, in that event, he shall become a fully competent witness for either party; and such person shall also become fully competent for either party, by a release or extinguishment, in good faith, of his interest, upon which good faith the trial judge shall decide as a preliminary question." May a witness excluded from testifying by clause (e) of section 5 make himself competent under section 6 by the execution of an assignment as distinguished from "a release or extinguishment?" We are of opinion, under the reasoning in Darragh v. Stevenson, 183 Pa. 397, that a witness, disqualified under clause (e) of section 5 of the Act of 1887 as a "remaining party" and having an "adverse interest" (Dickson v. McGraw Bros., 151 Pa. 98), may make himself competent under section 6 by an assignment of his interest, made in the usual course of events and prior to the inception of the litigation and not merely for the purpose of qualifying himself on the eve of or during the trial (as in Post v. Avery, 5 W. & S. 509, and kindred cases)—an assignment which is not collusive or colorable but made under circumstances conclusively showing its good faith. In the Darragh case the plaintiffs were partners and the question was whether the defendant's decedent had executed a certain note upon which judgment had been entered and opened. One

of the plaintiffs executed a paper which our Supreme Court held to be an assignment to the other of his interest in the judgment. Referring to this paper and to the words "release or extinguishment" in the act Mr. Justice MITCHELL said: "It is apparent that this instrument ...... although the words 'release and extinguish' are used is neither a release nor an extinguishment, but an assignment. It is not a release, as it is not made to the party against whom the claim is asserted nor for his benefit. And it is not an extinguishment, for the full claim is still in existence with no change but a transfer to one of the claimants. The words used in the statute, if taken in their strict meaning, would require that the witness' interest in the subject should be effectually terminated, not only as to himself but as to the other party against whom he is about to testify. This result is fully implied in the words release and extinguishment. An assignment is altogether different. It terminates the claim only so far as the witness himself is concerned, leaving it in full force as to the party charged by it. ...... If the Act of 1887 had stopped with the words 'release or extinguishment' it is clear that a witness excluded by section 5 for interest could not qualify himself by an assignment. But the statute adds the requirement that the release shall be in good faith, of which the court shall judge as a preliminary question. A release or extinguishment given to the adverse party must in its nature be absolute, and could hardly be other than in good faith. The language of the act therefore would seem to imply some latitude in the sense in which those words were used." (See also Semple v. Callery, 184 Pa. 95; Alexander v. Fidelity Trust Co., 238 Fed. 938, 942-3, reversed on another ground, 243 Fed. 162.) The court added that it was not necessary to decide in that case whether any mere assignment of his interest would qualify a wit-

ness under the statute because it was clear that the assignment there in issue had been made on the very eve of trial and only for the purpose of enabling the assignor to sustain the suit by his testimony and had not therefore been made in that good faith which the statute intends. This brings us to the question of whether, in the present case, the assignments were made in good faith.

There is always a legal presumption against the admission of such testimony as was received under objection in the present case. Chief Justice GIBSON's remark in Post v. Avery, supra, that "in doubtful cases the burden of proof will lie on the party attempting to get rid of the interest; and it will be incumbent on him to clear his motive from suspicion" is still applicable. In Phinney v. Tracey, 1 Pa. 173, it was said that the presumption "must be rebutted by the most overwhelming proofs" that the assignment was made in the usual course of business and without any intention, either expressed or understood, at the time of supporting the claim by the oath of the assignor; "not the slightest doubt should be suffered to remain, that at the time of the contract there was no such intention whatever entertained, no such necessity supposed to exist."

To the end that the auditing judge might properly decide as a preliminary question the good faith of the assignments, the proposed witnesses were examined upon their voir dire with respect to the circumstances under which the assignments were executed. The assignment of Andrew M. Linn, dated November 25, 1925, recited the paragraph of the will of Hannah L. Manown creating the trust and "for value received" sold, assigned, transferred and set over to Charles F. Linn all the right, title and interest of the assignor in the trust fund. The assignment of George T. Linn was dated December 1, 1926, and was

in the same form. With respect to these assignments Andrew M. Linn testified: "At the time of her death, which was a sudden death, my brother, George T. Linn, and I discussed the disposition of the principal of the trust fund held for the life of Hallie Linn Swaney and at her death to go to him and me and my brother, Frank,—C. F. Linn, and, on the day of her funeral, decided to turn that over to our brother, Frank, [Charles F.] without any regard as to what her estate was and without any knowledge as to what disposition she had made of it. We had no information as to the amount of her estate and no information whatever as to what disposition she might have made. ...... Sometime after the appointment of the Union Trust Company of Pittsburgh as executor of this will, I told Mr. Berryman, the trust officer, of the fact that four thousand dollars in the securities in the name of Hallie Linn Swaney should be held not for her estate but representing the trust estate created by the will of Hannah L. Manown and before the filing of an account—in fact before any knowledge came to me of the value of the estate, I furnished Mr. Berryman a formal assignment of my interest in this trust fund and requested that that fund be held separate from the estate and turned over to my brother, C. F. Linn." Under cross examination by counsel for appellant he said: "Q. Now, you said that this assignment that you had made was without consideration. Will you tell why you made that assignment? A. Yes. I made the assignment because fortune had been more kind to me than my brother Frank. I wished to give him so much money, that's all. Q. You didn't make it then for the purpose of making yourself a competent witness? A. None whatever. There was no controversy at that time. It was made after—the day after the death of my— Q. How does it come that you didn't make it before that? A. There was no occasion to make it before that."

The testimony of George T. Linn with respect to his motives in making his assignment reads: "Q. Now, this assignment from you to C. F. Linn was made without money consideration? A. Yes. Q. Voluntary assignment? A. Voluntary assignment. Q. State whether or not that assignment was made in good faith? A. It was made in good faith without any reference to any other proceeding because, whether it may seem ignorant or not, I didn't know that it would make any difference as to this proceeding. ...... Q. Was the assignment made for the purpose of qualifying you as a witness? A. It was not. I didn't know that I would have to be a witness." His cross examination on this subject reads: "Q. Was the matter of proving the claim talked over between you and your brother at all? A. No, not particularly, except that he may have said and I knew, that it would take an order of court to transfer the money. Q. Was there anything said to you as to the difficulty of proving the claim inasmuch as you had no writings from your uncle George or anything? A. No; there was nothing said about anything. Q. What did your brother do, your brother Charlie, C. F. Linn, Frank? A. He is a physician. Q. And you made this just simply as a gift from one brother to the other without any consideration, is that the idea? A. No consideration. He has a family and I have no family and I wanted to give him the money."

In disposing of the preliminary question of good faith the auditing judge said: "What is the good faith which the Act requires is expressly for the trial judge in the first instance: Semple v. Callery, 184 Pa. 95; Walls v. Walls, 182 Pa. 226; Fell v. McHenry, 42 Pa. 41; Camerer v. Patrons M. F. I. Co., 53 Pa. Superior Ct. 516, 526. This question, like any one of fact, must be determined on (1) what the witnesses say, (2) their credibility, as determined by the trial judge, and (3) the surrounding circumstances. There

were three parties to this assignment—the three brothers. Charles F., the claimant, is not a competent witness. That leaves the two other brothers as the only persons who know the facts, and they both say that in making assignments to their brother, they were actuated by no motives except that of benefiting him to the extent of their shares in this fund. ......

Mr. A. M. Linn has been a member of this bar for over forty years and no one stands higher either as to character or professional conduct and ability. Both of the witnesses are reputable and representative citizens, and are deserving of every confidence. The court had no difficulty in finding that the facts were as they stated them. The occasion of the assignment was the funeral of Mrs. Swaney. This would seem only natural. During the lifetime of the life tenant, these remaindermen probably were not greatly concerned as to the fund in question since their actual enjoyment of it would depend on their surviving her. But when they came together on the occasion of her death, they would naturally think of it and of what disposition they desired. At that time there had been no question raised as to its being turned over, and there was no reason to assume that payment would be withheld. The two brothers, feeling that Charles F. Linn needed the money more than they did, decided to turn their interests over to him—a most natural thing to do in view of their close relationship, and when the subject matter of the gift had never actually been in their possession. There is nothing to indicate that either party had any thought as to the matter of their competency in proving the claim. In fact, George T. Linn says that he had no knowledge that there was any such rule of law as that supplied by the Act of 1887." We think the testimony upon the preliminary examination, which we have quoted at length, sustains the finding of the auditing judge that the assignments here in question were not made for the purpose

of qualifying the assignors as witnesses but were executed from proper motives and in good faith long before there was any thought of the possibility of litigation. The presumption to which we have referred having been sufficiently rebutted by the testimony, the witnesses were competent and their testimony in support of the claim was properly received.

From the testimony of Andrew M. Linn and George T. Linn the court below found that when the executors of Hannah L. Manown settled their account it was orally agreed by way of a family settlement that one of the executors, George A. Linn, should retain possession of the securities representing the two trust funds in which he and his daughter Hallie Linn Swaney, were interested as beneficiaries and that the other two executors should hold the securities of the third fund in which they and their brothers, H. H. Linn and Charles F. Linn, were beneficiaries; that these securities consisted, inter alia, of approximately one hundred shares of Pennsylvania Railroad stock and twenty-eight shares of the Bank of Pittsburgh; that George A. Linn took possession of the bank stock, some of the railroad stock and other securities representing the $4,000 trust fund in question, and the other fund in which he was interested, and retained possession thereof until his death, intestate, on April 5, 1908, at which time they passed into the possession of the decedent as the administratrix of his estate; and that she agreed that the fund of which she was entitled to the income would be "safe in her hands." There was evidence tending to show that the twenty-eight shares of the Bank of Pittsburgh, having a present appraised value of $4,200, and which were owned by Hannah L. Manown at the time of her death, were transferred in March, 1908, to George A. Linn and to Hallie Linn Swaney in April, 1911, and were disposed of by her executor. There were also among the securities in the possession of Hallie Linn Swaney at the

time of her death approximately one hundred and fifty shares of Pennsylvania Railroad stock. The auditing judge found, however, that none of the assets of the estates of George A. Linn or Hallie Linn Swaney could be definitely earmarked as belonging to this particular trust. There was sufficient evidence to sustain these findings.

It is argued by the learned counsel for appellant that there is no testimony showing that the fund in dispute passed into the hands of the decedent. We do not so read the testimony. Andrew M. Linn testified to the following conversation between decedent and himself on the day letters of administration were issued to her on her father's estate, April 27, 1908: "I reminded her that among the assets in the hands of her father—and whether they had been assigned to his name or not—actually was a fund of four thousand dollars which only belonged to him for life and it belonged to her now, as to which she needn't account [the second fund above described], and a fund of four thousand dollars which belonged to her for life,—that is, that she was entitled to the income but that she must remember and keep that four thousand dollars separate from funds of her own for the reason that at her death the principal, under the will of our aunt, would come to myself and my two brothers. She said she knew all about these things and that that would be—that fund would be safe in her hands." On cross examination, after again referring to this conversation, he continued: "And at a date somewhat later than that, which was the only time she ever visited at my house here in Washington, when I again referred to the fact that she held in her hands four thousand dollars of which she was entitled only to the income and the balance came to us and she again said that was a fact and the fund was as safe there as any place else it could be, which I knew to be true."

In the light of this testimony we deem it unneces-

sary to consider in detail whether this particular $4,000 was so mixed with other funds of George A. Linn or Hallie Linn Swaney as to lose its identity as a trust fund, or whether, under the rule of Farmers' and Mechanics' National Bank v. King 57 Pa. 202, as applied to the evidence, it can be traced as a trust fund. Even if the view most favorable to appellant be taken, we at least have a situation in which the life tenant died in possession of the fund upon which she was entitled to receive the income. No bond had been given by her for the protection of her cousins, the remaindermen—the family agreement that she should retain possession of the fund during her lifetime having taken the place of a bond. Her estate is solvent and in any event, as held in Reiff's Appeal, 124 Pa. 145, "the remaindermen are now creditors of the estate of testatrix." Upon either ground the claimant was entitled to the award in advance of any distribution to the legatees. We therefore conclude that the learned president judge of the court below did not err in the conclusions expressed in his opinion and carried into effect in the decree of distribution, and the assignments of error are accordingly dismissed.

Decree affirmed at costs of appellant.