## Coyle v. Laster

*I. Raymond Kremer*, for plaintiffs.

*John V. Lovitt*, for defendants.

Bok, P. J., January 25, 1958.—On April 2, 1955, there was a fire at 52nd and Arch Streets, Philadelphia. According to the official records, the first alarm went in at 11:06 p.m., the last alarm at 11:27, and the fire was "under control", i.e., it could spread no farther, at 11:53.

There is a firehouse at 54th Street and Haverford Avenue, not more than half a dozen blocks from the fire. The scene of the accident out of which this suit arose was 54th and Vine Streets, which is on the route from the firehouse to the fire.

Plaintiffs, with two others, Shirley and Williams, were city firemen and formed the relief fire unit whose duty it was to be ready at 11:55 a.m. at the firehouse and to reach the scene of the fire at midnight in order to relieve the firemen then on duty.

The vehicle they went in was a privately owned wagon, colored red, that had "Philadelphia Police Reserve" painted on it. It was owned and driven by Abraham Laster, deceased, who was a member of the Police Reserve. His regular occupation was the owning and operation of a filling station but on most Fridays and Saturdays of the year he put on his reserve uniform and went "on duty". As his sister said: "He enjoyed doing that work and he volunteered and he liked it."

By a city ordinance the Police Reserve became official only when acting in emergencies connected with civil defense. And there was no fire emergency here, since the fire had been brought under control before plaintiffs left the firehouse. As Lieutenant Kennedy testified: "They are not on an emergency mission, because the men are already on the fire grounds extinguishing the fire and they are going to relieve the men who are already on."

When the Laster vehicle reached 54th and Vine Streets, going south on 54th, it collided with an automobile driven by Woodrow Patterson, going east on Vine; 54th Street is 34 feet wide and Vine, 50. The collision occurred in the southwest quadrant of the intersection.

Plaintiffs all recovered moderate amounts for pain and suffering, and since the jury found in their favor, their wages and expenses were stipulated and marked to the use of the city.

Defendant has filed motions for a new trial and for judgment n. o. v.

Her principal contention is that Shirley and Williams were incompetent witnesses under the Evidence Act of May 23, 1887, P. L. 158, sec. 5, clause (e), 28 PS §322. These two men are singled out because it is argued that without their testimony there was no evidence of negligence. That can be conceded.

What happened was that before the trial began, counsel for Shirley and Williams moved to sever their causes, and was overruled. They then suffered voluntary nonsuits and gave releases. The trial judge, acting under section 6 of the act, decided that these men were competent and allowed them to testify. The act reads, on this point: ". . . and such person shall also become fully competent for either party by a release or extinguishment in good faith of his interest, upon

which good faith the trial judge shall decide as a preliminary question": 28 PS §324.

Shirley and Williams had a disabling interest only in their own claims, and neither before nor after their voluntary nonsuits and releases did they ever have an interest in the claims of their fellow officers. A disqualifying interest is one which the judgment in the case would operate upon: Logan Lumber Co. v. Knapp, 155 Pa. Superior Ct. 580 (1944); Billow v. Billow, 360 Pa. 343 (1948). A judgment for the other plaintiffs would not have operated upon Shirley's and Williams' interest. They certainly "extinguished" their own claims.

The situation is not like that in Morgan v. Lehigh Valley Coal Company, 215 Pa. 443 (1906); Verstine v. Yeaney, 210 Pa. 109 (1904); Machnofsky v. Smith, 101 Pa. Superior Ct. 578 (1931); or in Darragh v. Stevenson, 183 Pa. 397 (1898), where the court said: "The witness did not release or extinguish his interest, but merely assigned it", and this was held an evasion, as he then testified and established his own claim. In the instant case Shirley and Williams did not seek to establish their own claims but testified for their fellows, and there is evidence that they had no agreement to be slyly compensated for doing so.

The good faith of the extinguishment and release was for the court and "is not preliminary merely to a second decision by the jury"; hence not in any way a jury question: Semple v. Callery, 184 Pa. 95 (1898).

We therefore consider Shirley and Williams competent witnesses for the other plaintiffs.

Defendant argues that there is no evidence of negligence.

Laster, driving the police vehicle in which plaintiffs were riding, died as a result of the accident about an hour later. Under doctrine too familiar to require citation, the presumption of due care that accompanies

a dead actor must yield before actual evidence. We do not believe that the presumption turns every single factor but operates on the whole situation; if, for example, there is evidence of negligence, say of excessive speed, the presumption does not provide a traffic light and render it green, or place the dead driver at a safe and legal distance so that he may justifiably drive rapidly.

Both Shirley and Williams testified that the trip began with a lurch, that Laster achieved a speed of 35 to 40 miles per hour, that he maintained such speed to the point of impact, which was in the southeast quadrant of the intersection, that their vehicle was hit at the extreme right rear and that it was spun around and at least leaned over, or turned over on its side. Whether Shirley was looking out the front window and could observe speed, or whether, after Williams testified in chief that he did not notice the traffic light at the intersection he meant to change his story when he said, on cross-examination, "just before the accident it was a beautiful red, I don't know whether it was because of the accident or because there was a light there, we all had pinwheels in our head", these were matters of meaning and credibility for the jury to resolve.

Defendant argues that Laster's speed of 35 to 40 miles per hour has not been shown to have been a proximate cause of the accident. This is hard to follow. A steady speed to the point of impact, almost across an intersection, when such speed is illegal, is firm source of proximate cause. The picture at the intersection is strengthened by Miss Maelott's testimony that Patterson, whom the jury exonerated, was also going 35 to 40. In view of that, it becomes almost absurd to say that speed had nothing to do with the collision. We are of opinion that there was sufficient

evidence on which to base a finding of Laster's negligence.

The statement given to the police by the additional defendant, Patterson, was allowed to be read as an admission against him; it was carefully excluded as evidence against defendant. Since this was done, defendant makes no complaint except to say that having heard it, the jury was "tainted" by it. This sounds as if defendant were trying to keep a point alive, for what it is worth, without objecting to it. Suffice it to say that we often expect the jury to hear things and forget them; it may be a pious hope, but it's the law.

As for the presence of an emergency, there is the official evidence of Lieutenant Kennedy that there was none and the records of the Fire Department showing that the fire was under control before plaintiffs started to relieve their fellow officers. The vehicle was not a city vehicle but a reserve vehicle, whose official operation is, by city ordinance, limited to civil defense. There is clear evidence that deceased was doing a voluntary duty at the time of the accident. The question of emergency did not, therefore, arise. See Omek v. Pittsburgh, 387 Pa. 128 (1956).

The final question is that plaintiffs should not have been allowed to testify, again because of the Evidence Act of 1887, to their injuries following the accident because they are a "thing" that is inseparable from the accident. By stipulation of counsel the hospital records were read to show dates of admission and discharge, diagnosis and treatment, in each case. Plaintiffs' counsel then added the history, over defendant's objection, but the objection to the histories was only on the point that they contained statements that each plaintiff was a passenger in the reserve vehicle. Since this appeared elsewhere only in the testimony of Shirley and Williams and since counsel's main attack upon

plaintiff's case was to exclude Shirley's and Williams' testimony, his only interest in the histories, as the record shows, was to keep out the statements about plaintiffs' being passengers. No objection was made to anything else in the histories.

We have shown that Shirley and Williams were competent and hence the argument about the hospital records is moot.

Beyond this, plaintiffs testified only to their condition from one day after the accident and hence were not testifying to a thing that occurred before Laster's death. The gap was bridged by Williams testifying to the visible injuries to his companions and by Dr. Loughridge testifying to the injuries as they appeared in the hospital records and explaining them.

The motions for a new trial and for judgment n. o. v. are overruled and judgment is entered on the verdict.