FIDELITY TRUST CO. v. ALEXANDER et al.

ALEXANDER et al. v. FIDELITY TRUST CO.

(Circuit Court of Appeals, Third Circuit. June 19, 1917.)

Nos. 2233, 2245.

1. TRUSTS ⬦⟶61(2)—TERMINATION.

A trust, created by an agreement of the trustee to hold property and accumulate the proceeds for the benefit of the cestuis, terminates on the death of the trustee.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 84.]

2. EXECUTORS AND ADMINISTRATORS ⬦⟶250—ADMINISTRATION—ORPHANS' COURT.

Plaintiffs' maternal grandparent devised property in trust for the benefit of plaintiffs and another brother and sister, who died unmarried. Under the Pennsylvania law, which governed plaintiffs' father, the testator was entitled to the shares of the children so dying; but he gave such shares to plaintiffs, and agreed to accumulate the proceeds of such shares for their benefit. At his death the testator disposed by will of such shares, which consisted of bank stock, to the exclusion of plaintiffs. *Held* that, on the administration of the estate, the orphans' court of Pennsylvania might have disposed, under its statutory powers, of plaintiffs' claim to the accumulations and the stock.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 893–895.]

3. TRUSTS ⬦⟶359(3)—JURISDICTION—ADEQUATE REMEDY AT LAW.

In such case plaintiffs allowed administration to proceed, and the bank stock was accounted for and distributed before they instituted suit. *Held* that, in view of the distribution and of the delay, plaintiffs were not, as they had an adequate remedy at law, entitled to invoke equitable aid to recover the value of the shares or of the accumulations.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 566.]

Cross-Appeals from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suit in equity by John S. Alexander and others against the Fidelity Trust Company. From a decree for plaintiffs ([D. C.] 238 Fed. 938), defendant appeals, and plaintiffs also appeal, seeking to increase the amount of the decree. Reversed, and bill dismissed, on defendant's appeal, and appeal of plaintiffs dismissed.

See, also, (D. C.) 214 Fed. 495; (D. C.) 215 Fed. 791.

H. Gordon McCouch and Harold B. Beitler, both of Philadelphia, Pa., for Fidelity Trust Co.

Frank A. Harrigan, of Philadelphia, Pa., and Henry A. Wise, of New York City, for Alexander and others.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. Federal jurisdiction of this suit in equity depends upon diversity of citizenship. The bill was filed in February, 1915, and is founded on the assertion that the Trust Company,

as executor of John Alexander (hereafter called the testator), came into possession of a trust fund belonging, not to the testator, but to the plaintiffs, and should account therefor. The District Court sustained the bill, and awarded the plaintiffs about $8,200, with interest from July 24, 1896. 238 Fed. 938. The company's appeal raises two questions: (1) Whether an indispensable witness—John S. Alexander himself, one of the plaintiffs, a son of the testator, and one of the cestuis que trustent—was competent under the Pennsylvania act of 1887 (P. L. 158); and (2) whether, in view of all the facts, this bill in equity can be maintained—the company's objections being (a) the existence of an adequate remedy before other tribunals; and (b) the laches of the plaintiffs, the testator having died in February, 1895, and the filing of this bill having been deferred for 20 years. Without expressing an opinion about the competency of the witness, we shall assume for present purposes that all his testimony was properly received, and shall confine ourselves to the second question. On this assumption the facts are as follows:

The testator, who died in his ninetieth year, was married twice. By his first wife he had five children, Mary, John S., Archibald, Annie, and James; and by his second wife he had one son, Lucien, much younger than the others. George Jones, the father of his first wife, died in 1867, and devised certain property to the testator, to be held in trust for her five children, the income or the proceeds to be paid to them at such times and in such manner as the testator should think most beneficial. In October, 1868, James, one of the five, died intestate and unmarried, leaving a total estate of about $7,500. His brother, John S., became the administrator, but under the Pennsylvania law the testator, as the father of James, was entitled to the estate. Within a few weeks the testator and the four surviving children made a parol family agreement, by which the testator gave to these children all his interest in the estate of James. In December, 1868, pursuant to this agreement, John S., as administrator of James, bought 60 shares of the Corn Exchange National Bank with money of the estate, and had the certificate made out in the name of the testator as "trustee." The certificate was delivered to the testator, together with the remaining money belonging to the estate of James, and the testator agreed to hold the stock and the money, and also the undivided one-fifth interest of James under the will of George Jones, in trust for the benefit of the four surviving children; the terms of the trust to be similar to the terms laid down in that will. In November, 1869, Annie, another of the children, died intestate and unmarried, and soon afterward another parol family agreement was made, by which the testator gave to the three surviving children all his interest in Annie's estate, declaring that he would hold this interest also in trust for them under terms similar to those in the will of George Jones. All the dividends on the 60 shares, up to and including the dividend of May, 1877, were collected by the testator and divided among the children entitled thereto. Not long after May, 1877, the testator advised the three children to allow the dividends to accumulate in his hands "for a rainy day," and they agreed to this proposal. In May, 1878, the testator wrote

the following memorandum in a book kept by him, in which he recorded his financial transactions:

"May 9, 1879. Certificate 562, in name of John Alexander, for 60 shares of Corn Exchange National Bank stock, belongs to J. S., M. C., and A. A."

Between December, 1868, and the date of this entry, these shares had been transferred several times, and finally, on June 15, 1875, had been put in the name of John Alexander individually, and not as "trustee." The reason for this we do not certainly know (probably, that the stock might be used as collateral security); but there is no suggestion of wrongdoing by the testator. In July, 1894, he made a deed of trust to the Fidelity Company, transferring 90 shares of the Corn Exchange Bank stock (which included the 60 shares in question), a bond and mortgage, and some railway stock—the company to hold and administer this property until the testator's death, and then to transfer it to his executors for disposal under his last will. In February, 1895, the testator died, and the bank shares passed to his two executors, one of whom is dead; the Trust Company being the survivor. Immediately after the testator's death, John S. notified R. L. Wright, vice president of the Trust Company (who died in January, 1897), that his father's estate held some property as trustee, particularly 60 shares of the Corn Exchange Bank, and that these belonged to his sister, his brother, and himself. He inquired also of the bank with reference to the transfer of the 60 shares, but obtained little information in reference thereto.

Within a few days after the testator's death a caveat was filed on behalf of the three older children against the probate of the testator's will, alleging undue influence on the part of Lucien; but the caveat was overruled by the register on July 29, and the will was proved. No appeal was taken to the orphans' court from the register's decision until nearly three years afterward, and the contest was not finally disposed of until May, 1903, when the Supreme Court of Pennsylvania affirmed the decree of the orphans' court sustaining the will. Alexander's Estate, 206 Pa. 47, 55 Atl. 797. In the three-year interval between the register's decision and the appeal to the orphans' court, the executors went on with their duties, and filed their first account in the orphans' court; this being called for audit in April, 1896. One item in the inventory and appraisement of the estate was 319 shares of the Corn Exchange National Bank (which included the 60 shares now in question), and all the shares were accounted for by the executors in their first account. The present plaintiffs had notice of the audit, but made no objection to the account, whereupon the orphans' court entered a decree of distribution, under which 200 shares were sold at auction on July 23, 1896, and 119 shares (which included the 60 shares) were awarded to Lucien. On July 20, 1896, while the proceeding was still pending, John S. wrote to the Trust Company, protesting against the distribution on the ground that the attack on the will had not been finally determined, saying that Mr. Wright, the Trust Company's vice president, had assured the contestants that their interests would be protected, and declaring also that the will did not pro-

vide for the payment of the trust fund now in question and of one other fund. He stated that:

"The documents establishing these trusts have after much research been obtained and will be presented when the case comes up in the orphans' court."

To this letter the Trust Company replied on July 7, making several remarks concerning the contest of the will, and saying that the orphans' court had decided that no one could prevent the ordinary course of administration merely by entering a caveat, not followed by an appeal. The reply also stated that the company—

" * * * had no knowledge with reference to the trust funds of which you speak. If there were such funds, of course, the claim should have been made at the audit, and it may become necessary for you to file a bill of review, so as to prevent distribution. I beg to notify you to take steps at once in that direction, if you intend so to do. * * * To conclude, if you propose to continue the contest, it will be necessary that you take the proper steps in that direction at once, and also have the awards in accordance with the will as directed by the orphans' court set aside by a bill of review. And I again beg to advise you that this must be done at once, if you desire to prevent distribution."

The plaintiffs took no steps, however, except that in March, 1900, John S. wrote again to the Trust Company, saying, inter alia:

"I desire to give you this additional notice that sixty (60) shares of the Corn Exchange National Bank in the estate of my father, the late John Alexander, belongs to the estate of James C. Alexander, who died in 1868. As shown by the inclosed certificate of the register of wills, I was appointed administrator of the last-named estate. As such, I invested a part of the proceeds thereof in the said 60 shares of stock, and placed the same in my father's hands to be held in trust for the heirs, and it was so entered on his books. Shortly after my father's death, I gave you notice as custodian of the assets of his estate that the said stock was a trust, and am therefore surprised to recently learn from you that probably the stock has since been delivered to Lucian H. Alexander. The heirs of James C. Alexander, after my father's death, demanded of me this stock, and I expected my notice to you would have been respected, until the pending litigation over my father's estate reaches a conclusion.

"In view of the premises, I ask you to recover the said 60 shares of stock, and notify you that, if you refuse or fail to do so, I will hold you responsible for the value of the same and for all damages resulting from your acts or negligence in the matter."

In May, 1904, at the audit of the second account of the executors, which showed that the 319 shares had either been converted or distributed, the plaintiffs appeared by counsel and made no objection thereto.

At this point the matter rested until March, 1912, when the plaintiffs came into possession of an item of evidence concerning the 60 shares that seemed to them to be valuable and that apparently revived their interest. Three years later, they filed the bill now before the court. The estate is, and has always been, solvent, and it has not yet been fully settled. We are informed that sufficient assets are on hand to meet the plaintiffs' claim, if it should be established, either in whole or in part.

[1-3] The single question before us is whether this proceeding in equity should be sustained, and in our opinion the answer should be in

the negative, for reasons that may be briefly given. There is no doubt that the trust in controversy came to an end when the testator died in 1895. Freedley v. Security Trust Co., George Jones Estate (Del. Ch.) 84 Atl. 883. At that time, therefore, the three plaintiffs were entitled to an equal distribution of the fund, and of course they had the right to proceed at once in any appropriate tribunal by any appropriate form of action. The fund consisted of money received by the testator in the form of dividends, and also of 60 shares of stock. So far as the dividends were concerned, an action at law would have been an adequate remedy, and we see no reason, also, why the plaintiffs could not have adopted the alternative remedy of presenting the claim to the orphans' court at the audit of the executors' accounts. There is no evidence that the testator was to invest these dividends for the purpose of accumulation, and, even if theoretically the money be considered as in his hands, it was not ear-marked, but was simply there as an unidentified sum that he was bound to make good to the plaintiffs whenever the proper time should arrive. Essentially it was a debt that the testator owed, and his estate was bound to discharge it on the same footing as any other obligation for which he might be liable. The amount was easily ascertainable, and the testimony of John S. could have established the existence of the trust as readily at that time as in the present proceeding. But the plaintiffs had a claim also for the stock itself, and if the shares could then have been identified in the hands of the executors, it may well be that the plaintiffs might have maintained a bill in equity to recover the specific property, and in that proceeding they might also have recovered the dividends as an incident to the principal. They knew that the estate held 319 shares of the Corn Exchange stock, and, although on the face of the certificates all these shares were in the name of the testator individually, this did not prevent them from proving that 60 shares were in fact the property of the trust. The production of the testator's books of account could have been compelled, the transfer books of the bank could have been reached, and the testimony of John S. was available then, as now. Moreover, as we understand the decisions of the Pennsylvania Supreme Court (Moore's Estate, 211 Pa. 338, 60 Atl. 987; Crosetti's Estate, 211 Pa. 490, 60 Atl. 1081; Paxson's Estate, 225 Pa. 204, 73 Atl. 1114; Williams' Estate, 236 Pa. 259, 84 Atl. 848), this claim for the shares could have been presented and determined by the orphans' court, which could have disposed of the whole controversy in the exercise of its statutory powers. Assuming, however, that the plaintiffs were not confined to the orphans' court, but could have proceeded in any other court having jurisdiction of the parties and the subject-matter, the fact remains that no action of this or of any other kind was taken before any tribunal, and without objection or appeal the executors were allowed to go on with the settlement of the estate, and with the conversion or distribution of all the shares of stock under the decree of the orphans' court. Of this distribution the plaintiffs had actual as well as constructive notice, and after all the shares had thus been disposed of, either by conversion into money or by an award in specie, we think it clear that the claim became completely a claim for money. The dividends had always been money, and the shares themselves had now been transmuted into money, or

had been awarded to another person, so that the claim of the plaintiffs against the estate was now, not for the stock, but for its value, whatever amount that might prove to be. For such a claim an equitable remedy was no longer necessary; no accounting was required, except a mere arithmetical computation, and either a purely legal remedy or the remedy in the orphans' court was adequate. As we regard the matter, the orphans' court was the more satisfactory tribunal, and in practical effect the District Court was of the same opinion, as may be seen by paragraph 9 on page 962 of 238 Fed. In a word, we think that the ground for a bill in equity disappeared after the stock had been converted or distributed, and this is the only subject that concerns us now.

In No. 2233, the appeal of the Trust Company, the decree below is reversed, at the costs of the appellees, with instructions to dismiss the bill; but this order is without prejudice to the right of the appellees, either to bring such suit at law as they may be advised to bring, or to present their claim to the orphans' court of Philadelphia county, to be there considered and disposed of as that court may see proper.

The appeal of the plaintiffs, in No. 2245, which seeks to increase the amount of the decree below, is dismissed, at their costs.