# CASES

## ARGUED AND DETERMINED

#### IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS AND THE DISTRICT COURTS

---

ALEXANDER et al. v. FIDELITY TRUST CO. (three cases).

FIDELITY TRUST CO. v. ALEXANDER et al.

(Circuit Court of Appeals, Third Circuit. November 24, 1917. On Rehearing, March 27, 1918.)

Nos. 2277–2280.

1. TRUSTS ⬅️305—ACCOUNTING—LACHES.

Where complainants' father, who held in trust for their benefit the proceeds of land devised in trust for them by their maternal grandfather, and was, under the terms of the will, entitled to withhold distribution during his life, complainants' failure to demand an accounting during the lifetime of their father, the latter having recognized the existence of the trust up to the time of his death, did not amount to laches precluding the enforcement of their rights against the executor of the father's estate.

2. TRUSTS ⬅️305—ACCOUNTING—LACHES.

Two years after the death of their father, in 1895, complainants made demand on defendant, executor of the estate of the father, for settlement of a trust created for complainants' benefit by their maternal grandfather and recognized by the father at the time of his death. Meanwhile one of the complainants had filed a caveat against the probate of the will, and, though defeated in the lower court, appealed to the Supreme Court, wherein the will was upheld by a decision rendered in 1903. In 1899 complainants secured the appointment of a substituted trustee under the will of their grandfather, which trustee that year sued defendant for an accounting. Defendant then filed a bill for vacation of the appointment of such trustee, and the suit for accounting was not disposed of pending determination of the proceeding for vacation of appointment of the substituted trustee. *Held*, that where complainants, a few months after the vacation of the appointment of the substituted trustee, filed a bill for an accounting, they were not guilty of laches precluding recovery, though 18 years elapsed between the death of their father, the original trustee, and the filing of such bill, complainants' demands on defendant executor and institution of suit by the substituted trustee having fully advised it of complainants' claim, so that defendant, which required a refunding bond as a condition to distribution, was not injured by the delay.

3. TRUSTS ⬅️291—PAYMENT—SETTLEMENT.

A father, who was trustee for his children under a trust created by their maternal grandfather, cannot, by making bequests to them by will in lieu of accounting for the trust property which he commingled with his own, discharge his liability as trustee, the children not being bound to accept the proposed bequests any more than they would have been

---

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

249 F.—1

bound in the lifetime of the father to have accepted a sum of money in satisfaction of their rights as beneficiaries.

4. ABATEMENT AND REVIVAL ⊂⇒14—PENDENCY OF OTHER SUIT—EFFECT.

Complainants' father, a citizen of Pennsylvania, was by the will of their maternal grandfather made trustee of a trust for complainants' benefit. After the death of the father a Delaware corporation was appointed as substituted trustee under the will of complainants' maternal grandfather, and such trustee instituted an action in the federal court against defendant, a Pennsylvania corporation, and executor of complainants' father. On petition of defendant, the order appointing the substituted trustee was revoked; whereupon complainants, nonresidents of Pennsylvania, filed a bill in their own names against defendant for an accounting. *Held* that, if defendant was injured by the pendency of the suit by the substituted trustee, it should move for a dismissal thereof, and was not entitled to a dismissal of the bill by complainants.

5. EXECUTORS AND ADMINISTRATORS ⊂⇒47—ASSETS—DISTRIBUTIVE SHARE.

The shares of deceased beneficiaries under a trust are distributable to their administrators, and, in a suit by a surviving beneficiary, the question whether the shares of such deceased beneficiaries descended to the survivors need not be determined.

6. TRUSTS ⊂⇒305—ACCOUNTING—RIGHT TO—COMMINGLING OF ESTATES.

Where a trustee, without the consent or knowledge of the beneficiaries, commingled trust funds with his own, but up to the time of his death recognized the validity of the trust and his liability to account, his executor cannot defeat a suit by the beneficiaries to compel an accounting, no rights of any third persons having intervened; for the trustee, by commingling the trust funds with his own, rendered his whole estate liable to the beneficiaries.

7. EVIDENCE ⊂⇒60—PRESUMPTIONS—INNOCENCE.

Where the act of a party may refer indifferently to one of two motives, the law prefers to refer it to that which is honest rather than to that which is dishonest.

8. TRUSTS ⊂⇒305—COMMINGLING OF TRUST FUNDS—PRESUMPTION.

Where a trustee commingled trust funds with his own and entered credits to the cestui que trust on his books, the presumption is that the trustee intended the joint fund to be chargeable with the trust, and casts on the trustee or his representative the burden to show clearly what part of the property belongs to his own estate.

9. JUDGMENT ⊂⇒590(1)—DETERMINATION—RULE OF DECISION.

In a suit to compel the executor of a deceased trustee to account, a decision, in a previous suit to compel the executor to account for property held by the deceased under a different trust, that the beneficiaries having allowed the administration to proceed and the trust res to be disposed of and distributed before they instituted suit, they were not entitled to invoke equitable aid to recover the value of the property or the accumulations, having an adequate remedy at law, does not amount to a rule of decision precluding a decree directing an accounting by the executor, where the testator in the latter case had commingled the trust funds with his own, and the beneficiaries had at all times since his death been asserting their rights to an accounting.

10. TRUSTS ⊂⇒305—ACCOUNTING—ACCEPTANCE OF BENEFITS—EFFECT.

That a testator, who was trustee of a trust created by his son's maternal grandfather, in which the son was a beneficiary, made bequests to his son, which his will stated were to be accepted in lieu of any right of accounting, will not preclude the son from enforcing an accounting by testator's executor, where the son attacked the validity of the will and refused to accept any benefit thereunder.

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

11. COURTS ⊂⇒505—STATE AND FEDERAL COURTS—EXECUTION.

In a suit in the federal court against defendant, a corporate executor, to compel it to account for trust property which its testator as trustee commingled with his own funds, there was a decree for complainants directing an accounting. The testator's estate was at the time of the rendition of the decree still in progress of settlement in the state court. *Held*, that notwithstanding the usual rule that in suits against an executor the law presumes that he has a sufficiency of assets in his hands belonging to his testator with which to pay the judgment or decree against him, unless he pleads complete administration or that he has only assets to a limited extent, etc., execution should in the first instance be denied, so as to allow presentation of the decree to the state court.

12. WILLS ⊂⇒787—ELECTION—EFFECT.

Where a beneficiary under the will of one who was a trustee elected to take a bequest which the will stated should be in full payment of any demands for which the testator was liable as trustee, such election is binding on the beneficiary, and she cannot compel the testator's executor to account for trust property in his hands.

13. EVIDENCE ⊂⇒271(18)—EX PARTE DECLARATIONS—ADMISSIBILITY.

An ex parte statement by a trustee in his own book that he had paid one of the beneficiaries is not admissible in an action by the beneficiary to compel his executor to account.

14. TRUSTS ⊂⇒305—ACTIONS—PAYMENT OF BENEFICIARY.

In a suit against the executor of a trustee to compel an accounting for trust property which the trustee commingled with his own property, where there was nothing to show that one particular beneficiary had been paid, it appearing that the trustee recognized the existence of the trust up to the time of his death, the claim of such beneficiary must prevail.

### On Petition for Reargument.

15. APPEAL AND ERROR ⊂⇒828—REARGUMENT—GRANTING OF PETITION.

Where petitioner would be affected by the decree appealed from, though he was not named therein, and, had he then asked, he would have been heard when the appeals were originally argued, his petition for reargument will be granted, to avoid a possible injustice; it appearing that he had no record notice of the appeals.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Bill by Archibald A. Alexander, Mary C. Alexander, and John S. Alexander against the Fidelity Trust Company, executor of the estate of John Alexander, to compel an accounting. From a decree in favor of Archibald A. Alexander, but denying relief to the other complainants, the trustee and Mary C. Alexander and John S. Alexander severally appeal, while Archibald A. Alexander appeals from an order supplemental to the decree, staying execution thereon. Affirmed as to the appeals of all parties save John S. Alexander, and as to him reversed and bill reinstated with directions.

See, also, 243 Fed. 162, —— C. C. A. ——.

M. Hampton Todd, of Philadelphia, Pa., for appellants.

H. Gordon McCouch and Harold B. Beitler, both of Philadelphia, Pa., for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. Federal jurisdiction of this action depends upon diversity of citizenship. The bill was brought by Archibald A. Alexander, Mary C. Alexander, and John S. Alexander against the Fidelity Trust Company as executor of their father, John Alexander, to compel an account of a certain trust. The fundamental averments of the bill are that John Alexander had been a trustee for the plaintiffs, that he had not accounted for the fund, but had left it as an indistinguishable part of his estate, and that his executor was in possession of assets sufficient to respond to the plaintiffs' demand. In full detail the facts appear in the following unreported opinion of Judge Thompson, delivered August 26, 1915:

"The plaintiffs filed a bill for an accounting by the Fidelity Trust Company, as executor and trustee under the will of John Alexander, deceased, of moneys received by the decedent, John Alexander, as trustee for the plaintiffs under the will of George Jones, deceased. The Fidelity Trust Company alone filed an answer and put in a defense.

"George Jones, a resident of Wilmington, Del., died in August, 1867. John Alexander married George Jones' daughter, Mary Jane, who died prior to the time of George Jones' death, leaving five children, Mary C., John S., Archibald A., still living, and James G. and Annie G. Alexander, both deceased.

"The second item of George Jones' will is as follows:

" 'To my Son in Law John Alexander and his heirs and assigns I give and devise all my farm land in Kent County in this State, in Trust for the Equal use, benefit and behoof of his children by my daughter Mary Jane (now deceased) with authority to retain and manage it for their respective Equal benefit, or at his option at any time to convey and assign the same to them and their heirs as Tenants in Common free and discharged of any trust or, with the assent to be expressed in writing, of such of the said children as may at the time of the Exercise of such option, have attained twenty-one years of age, to sell and dispose of the said lands and tenements, at public or private sale for the best price to be obtained therefor, and thereupon to make a good and sufficient deed or deeds in fee simple therefor to the purchaser or purchasers thereof, free from all Trust and any liability of the purchaser or purchasers to see to or account for the proper application of the purchase money by the said John Alexander or his heirs; the said purchase money thereupon to be still held in Trust by him or them for my said Grandchildren, or at his discretion, to be paid over to them respectively discharged of any Trust, at such times and manner as he shall deem most beneficial to them respectively.'

"Letters of administration were granted to John S. Alexander upon the estate of James G. Alexander, December 22, 1868, and upon the estate of Annie G. Alexander, November 4, 1899.

"After the death of George Jones, the decedent, John Alexander, remarried and had one son, Lucien H. On March 27, 1868, John Alexander, together with Mary C., John S., and Annie G., all of whom had then reached the age of twenty-one years, sold the real estate in Kent county, known as Linden Farm, to Henrietta Ord Underwood, for the sum of $13,000. The purchase price was paid to John Alexander as follows: $10,000 by the assignment to him of a bond and mortgage of John P. McLear and wife to Henrietta Ord Underwood to secure the payment of the sum of $10,000 and the remaining $3,000 by a purchase-money mortgage upon Linden Farm in the sum of $3,000. John Alexander sold the McLear mortgage March 18, 1872, for $10,000, together with the interest due thereon, the proceeds in all exceeding $12,000. The decedent, on March 28, 1873, charged himself as trustee, and credited the accounts of Archibald and Mary, respectively, with the sum of $4,026.91 each. It is conceded that settlement in the sum of $4,026.91 in full for his share of the proceeds of the McLear mortgage under the George Jones trust was made at that time by the decedent with his son John S. Alexander. The Underwood mortgage for $3,000 was sued out in proceedings brought in 1884,

and the land was purchased at the sheriff's sale by John Alexander in his own right for the sum of $6,500 and a deed made to him by the sheriff. The title to the property remained in John Alexander at the time of his death. John Alexander continued to recognize the George Jones trust and his liability to account under it down to the time of his death. This is shown by entries in his book and by declarations in wills made in 1891 and 1893. In a will executed June 26, 1891, by item 4 he directed his executors (in case he did not do the same thing in his lifetime) to transfer to the Fidelity Insurance Trust & Safe Deposit Company, in trust for his daughter Mary, certain securities, and, in case he did not do the same thing in his lifetime, to transfer to his son Archibald certain securities and the proceeds of a certain life insurance policy, with the following clause applying to both bequests: 'Which transfers include payment in full to my daughter Mary C. and my son Archibald A. of their interest in bequest of their Grandfather.'

"In an entry in his ledger under the date of January 13, 1887, he had enumerated the same securities referred to in the will of 1891, and directed that his executors transfer them to Mary and Archibald, respectively, at his death in case he had not done so in his lifetime.

"The testator further directed that reference be made to the memoranda accounts of his children to ascertain whether the transfers referred to had been made in his lifetime. It is apparent that his intention in item 4 of the will of 1891 was to designate the funds held by him in trust, and, as far as Mary and Archibald were concerned, to carry out the directions of George Jones under the last clause of item second of his will, viz.: 'The said purchase money thereupon to be still held in trust by him (John Alexander) or them for my said grandchildren, or, at his discretion, to be paid over to them respectively discharged of any trust, at such times and manner as he shall deem most beneficial to them respectively.'

"In a subsequent will dated March 15, 1893, which was duly probated, in the fourth paragraph he again recognized his liability to account for the George Jones trust by directing his executors, in case he had not done the same thing in his lifetime, to pay over to the Fidelity Insurance Trust & Safe Deposit Company for his daughter Mary C. the sum of $15,000, to be held in trust with power of appointment in her by will; and further directed his executors, in case he had not done the same thing in his lifetime, to transfer to his son Archibald certain stock, certain interest in joint indebtedness declared against his sons Archibald and John S., and the proceeds of a certain life insurance policy, and declared 'these payments and transfers include payment in full to my daughter Mary C. and my son Archibald A. of their interest in bequest of their grandfather Jones.'

"He further provided in item 4: 'As my devoted son John S. has years ago received from me his share of his grandfather Jones' estate, and has also been released from certain large cash liabilities to me, I bequeath in this item of my will only to my children Mary C., Archibald A., and Lucien H., and I have, according to my best judgment, done the strictest equity to all.'

"The existence of the George Jones trust at the time of John Alexander's death, and his recognition of his liability to account to Mary and Archibald, is therefore clearly established by the testator's declaration.

"During the lifetime of John Alexander, he had advanced and loaned large sums of money to his sons, which appear charged against them on his books. In the will of 1893, item 8, he states that the advances to his two sons John S. and Archibald A. amount to $115,100, 'a portion of which indebtedness to the extent of ($6,000) Six thousand dollars thereof I have by Section Four of my Will bequeathed to my son Archibald A., which leaves at this date as forming part of my residuary estate a net balance of indebtedness due by my said two sons of One hundred and nine thousand one hundred dollars ($109,100), whereby my said two sons have jointly received possibly more than their just share of my residuary estate.' The amount of the indebtedness was by a codicil declared to be $121,800.

"The accounts with Mary upon her father's books do not indicate any intention on his part to charge against her share in the George Jones trust any individual advances made to her. The individual accounts of Archibald

upon his rather's books, as far as appears, show loans and advances made by his father in his individual capacity, and do not indicate any intention to charge them against the fund held as trustee. The declarations in the wills of 1891 and 1893 indicate that up to that time no settlement of the Jones trust estate had been made, but that John Alexander intended by his bequest, in item 4, to charge against the shares of Mary and Archibald under the Jones trust in settlement thereof the money and securities therein enumerated.

"It is evident from the books of the decedent and conceded by all parties in interest that there was a commingling of the trust funds with his individual funds, but there is no evidence that at the time advances were made in his lifetime it was intended by the parties that they should be considered as advances out of the trust funds.

"Upon the death of John Alexander on February 7, 1895, the will of March 15, 1893, with codicils thereto, was offered for probate. A caveat and petition for an issue filed by Archibald A. Alexander were, after hearing before the register of wills of Philadelphia county, dismissed, and the will and codicils admitted to probate. In October, 1898, John S. Archibald and Mary appealed to the orphans' court from the decision of the register of wills, and, after lengthy hearing, the appeal was dismissed and an issue d. b. n. refused. From the action of the orphans' court an appeal was taken to the Supreme Court of Pennsylvania, whereupon, on May 11, 1903, the decree of the orphans' court was affirmed. See Alexander's Estate, 206 Pa. 47, 55 Atl. 797. Meanwhile, on June 15, 1899, upon petition of Mary C. Alexander and John S. Alexander, the Court of Chancery of Delaware appointed the Security Trust & Safe Deposit Company of Delaware substituted trustee under the last will and testament of George Jones. The substituted trustee on December 12, 1899, filed in the United States Circuit Court for this district to No. 29 of October sessions, 1899, a bill in equity against the executors of John Alexander's will, alleging substantially the same facts, so far as the right to an accounting is concerned, as are set forth in the present bill, and praying for the same relief as in the present bill. After the suit was at issue, a motion made to dismiss for want of jurisdiction was held under advisement by Judge McPherson pending a suggestion that the construction of the will should be primarily determined by the Delaware Court of Chancery, and the question of the propriety of the complainant's appointment raised in that court. On April 13, 1905, a bill was filed in the Delaware Court of Chancery by the Fidelity Trust Company, as executor and trustee under the will of John Alexander, praying that the appointment of the substituted trustee be vacated. A decree was finally entered on October 10, 1912, revoking the order appointing the Security Trust & Safe Deposit Company as substituted trustee as having been inadvertently entered.

"On January 7, 1913, the present bill was filed.

"It appears by the answer that repeated demands were made by the plaintiffs upon the defendant for the sums in controversy and for an accounting more than sixteen years prior to the filing of the bill herein, and a denial of all liability for the payment of any such sums or of any obligation to account therefor was then made by the defendant.

"The first account of the executors was audited in the orphans' court April 17, 1896, and confirmed nisi, and adjudication filed April 30, 1896. It appears by the adjudication and schedule of distribution that $15,000 was awarded to the Fidelity Insurance, Trust & Safe Deposit Company as trustee for Mary C. Alexander under the trust declared in the fourth item of the testator's will. It further appears that payments of $1,107.50 of income had been made by the accountants to the Fidelity Trust Company, which are referred to in the schedule as 'payments on account interest to May 16, 1896, on Mary C. Alexander bequest of $15,000, in accordance with fourth item of will as per account filed.'

"It also appears that at that time there was contained in the schedule of distribution an award to Archibald A. Alexander of 100 shares of stock of the Texas National Bank, and of an assignment of $6,000 of the testator's interest in the joint indebtedness due to the estate by his two sons, Archibald and John S. As the account then being audited was that of the executors

under the will, and not of the Fidelity Trust Company as trustee for Mary C. Alexander, it is apparent that the payments of income charged in the account consisted of income paid by the accountants as executors to the Fidelity Trust Company as trustee. There is no evidence of any payment directly to Mary C. Alexander, or acceptance by her, of any income out of the $15,000 bequest, and there is no evidence of any acceptance by Archibald A. Alexander of the bequest to him in settlement of his interest in the George Jones trust.

[1] "The defense mainly relied upon is laches, in that the trust determined on the death of John Alexander and the beneficiaries thereunder were then entitled to sue therefor; that sixteen years prior to the filing of the bill repeated demands were made by the plaintiffs for an accounting and a denial of all liability made by the defendant, and that, in view of the laches of the plaintiffs, forty-two years having elapsed since the alleged tortious conversion of the trust fund and failure to pay income to those entitled, and eighteen years having elapsed since the death of the testator and the filing of the bill, they have lost their right to an account and the bill should be dismissed.

"Under the facts developed, laches cannot be imputed to the plaintiffs based upon their failure to claim an accounting during the lifetime of their father. There was no disavowal by him of the trust, and up to the date of the will of 1893, and therefore to the time of his death, he never disavowed his liability to an account, but, by his own declarations in his books of account and in the wills of 1891 and 1893, declared the continued existence of the trust and his liability to an accounting.

[2] "Neither can laches be charged against the defendant by reason of the fact that the bill was not filed until January, 1913, or eighteen years after the death of the testator. That is an unusually long period to elapse before the assertion of one's right, and, if nothing had been done during that interval, the defense of laches would doubtless avail even in favor of a fiduciary. It is admitted, however, that demand was made by the plaintiffs for an accounting in 1897. Meanwhile a caveat against the probate of the will under which the defendant claimed as executor had been filed, and in 1898 an appeal taken to the orphans' court. In 1899 a substituted trustee was, upon the application of two of the plaintiffs, appointed by the Delaware Court of Chancery for the purpose of asserting the same rights as are now asserted by this suit. In 1899 the substituted trustee brought suit in the Circuit Court in this district, based upon the same grounds as the present suit. By reason of litigation in Delaware concerning the appointment of the substituted trustee, the proceedings in the prior suit in this court were not carried to a conclusion, but, upon the vacation of the appointment of the trustee in 1912, the present bill was promptly filed. If the Fidelity Trust Company had had no notice of the trust, delay for a much shorter period would defeat the plaintiffs' rights upon the ground of laches, but the testator, by the terms of the very will under which the defendant derives its authority, declared the existence of the trust. The disavowal by the Trust Company upon demand two years later was followed by the proceedings brought in 1899, four years after the decedent's death. The Trust Company was not at that time in a position to assert that the beneficiaries under the George Jones trust were sleeping upon their rights, and surely it could not so claim during the pendency of that suit. If, during the time before the bringing of the present suit, the defendant has parted with the evidences of the condition of the trust, its position is not due to want of notice of the claims of the plaintiffs through their laches. It was not because of neglect to assert the plaintiffs' rights that the books of account in which the decedent kept the record of his dealings with the beneficiaries under his will had been allowed to go out of its possession and were brought into court in the custody of Lucien H. Alexander, who appeared and produced them under a subpœna duces tecum. At the audit of the second account of the executors, May 9, 1904, it was requested by counsel for the defendant that the sums awarded be retained by the accountant to await the result of the suit pending in the Circuit Court for this district brought by the Security Trust Company of Delaware, trustee, under the will of George Jones, against the executors. This request was denied because of uncertainty as to the length of time which would probably ensue before the final determi-

nation of the suit, but, in order to protect the accountant, distribution was made conditionally upon a refunding bond being entered into by the distributees, and it appears that the executor still has in its custody about $43,000 undistributed. Surely in 1904, when its counsel called the court's attention to the pending suit, the defendant had notice and would not have deprived itself of the means of defending that suit. So far as appears, the suit is still pending, but cannot be prosecuted, because the plaintiff's appointment as trustee under the George Jones will was, at the instance of the defendant, vacated in 1912, but the present suit was immediately brought after the order vacating the appointment was made. In the absence of the running of a statute of limitations, the doctrine of laches is invoked to prevent injury to an innocent party. It is doubtful if it should be applied as strictly in favor of a corporation engaged under its charter in the business of acting as executor and trustee as in favor of an individual. That the defendant has not, during the last eighteen years, been permitted by the plaintiffs to lose sight of the fact that they claimed as beneficiaries under the George Jones trust for sufficient intervals of time to bar them by laches is clearly apparent upon the present record, and no evidence has been presented to show that the defendant as a stakeholder will suffer by reason of being required to account.

[3] "The next defense set up is payment through advances to the plaintiffs, through their support by their father and through settlement made under his will. The capacity in which the decedent held the funds of the Jones trust was entirely separate and distinct from the capacity in which he dealt with his children in supporting them and in making advances to them. After a careful examination of the voluminous statements of account which were offered in evidence, I have been unable to find anything which indicates that, prior to the will of 1891, John Alexander intended that the liability of his sons and daughter to him individually should have any relation to his liability to them as trustee under George Jones' will. It is contrary to the ordinary conception of a trust that a trustee may offset his individual claim against his cestui que trust against the latter's claim upon the trust fund. It is apparent, however, that, under the wills of 1891 and 1893, the testator attempted to make a settlement under the trust with his son Archibald and daughter Mary. John Alexander could dispose of his individual estate as he desired, but he could not make a settlement with his children of the trusteeship as provided for in the wills without the consent of the cestuis que trustent evidenced by acceptance or in some other manner indicating their consent, express or implied. There is no evidence that Archibald ever consented to such arrangement, nor that he has accepted the provisions made for him under his father's will, and he is therefore free to dispute the effect of the bequest as a settlement with him. If there were evidence of the acceptance by Mary of income from the fund bequeathed to her under the fourth item of her father's will as such, she no doubt would be estopped from demanding an accounting in this suit. It has not been shown, however, that the payment to the Fidelity Trust Company as her trustee was followed by payment to her, and there is no evidence in the case, therefore, that she has accepted the benefits of the $15,000 bequest, as alleged in the answer, and the allegation, being deemed denied under the 31st equity rule, falls for want of proof. "The claim of John S. Alexander was withdrawn by his counsel at the trial.

[4] "The question of jurisdiction raised by the defendant was determined by Judge Sater, sitting by designation in this court, when a motion to dismiss the bill upon that ground was denied. If the defendant is injured by the pendency of the suit of the Security Trust Company, it should, as suggested by Judge Sater, move for a dismissal of that bill.

[5] "A further question is raised by the pleadings as to whether the interests of James G. and Annie G. Alexander vested in their father, the decedent, or in their brothers and sister, the plaintiffs. The decision of that question is not necessary in the present suit, as in either case their shares would be distributable to their administrator.

"A decree may be entered in accordance with the prayers of the bill in favor of the plaintiffs Mary C. and Archibald A. Alexander, and dismissing the bill as to John S. Alexander."

After filing this opinion Judge Thompson heard additional testimony, which led him to conclude that Mary was not entitled to relief, and in March, 1916, he therefore ordered an account in favor of Archibald alone, dismissing the bill as to Mary and John S.:

"The additional evidence offered by the defendant the Fidelity Trust Company upon rehearing is sufficient to establish an acceptance by Mary C. Alexander of the bequests under her father's will, subject to the terms of the. will providing that the 'transfers include payment in full to my daughter Mary C. and my son Archibald A. of their interest in bequest of their grandfather.'

"The additional evidence does not support the same conclusion as to Archibald A. Alexander, and no sufficient cause is shown for disturbing as to him the findings in the opinion filed August 16, 1915.

"As to the interest of John S. Alexander in the Jones trust, there is no evidence of any demand made by him upon his father for an accounting during his lifetime, nor is there any evidence to establish such a recognition by his father of accountability to him as appears by his declarations in regard to Archibald A. and Mary C."

Accordingly an account was stated by a special master (Hon. Wm. W. Porter), who in a clear and convincing report sustained the material positions of Archibald, and recommended a decree in his favor, the amount not being in dispute on this appeal. Exceptions to the report were dismissed in the following opinion (also unreported), and a final decree was entered:

[6] "As stated in the brief of counsel for the defendant:

" 'These exceptions all depend on the same underlying principle of law, which may be thus briefly stated:

" 'The Jones trust terminated on the death of John Alexander. No property belonging to the trust came into the hands of his executors, from which it follows that at no time since the death of John Alexander would a bill in equity lie against his executors for an accounting in reference to said trust, the only right of action being one at law against the executors for the tortious conversion by their testator of the trust funds in question. The status, therefore, of the beneficiaries after the death of John Alexander, was changed to that of ordinary creditors of his estate, from which it follows, as a corollary, that the executors have the right to set off against such claim any debts due by the beneficiaries to the estate, and the statute of limitations runs against this, as against any other action at law, from the date of the death of John Alexander.'

"Assuming that the trust terminated at the death of John Alexander, it does not follow that the cestui que trust's right to an accounting was then changed into a debt at common law.

"The fallacy in the argument for the defendant is that some controlling facts are left out of consideration.

"First. The trustee commingled the funds of the trust estate with his own, without the consent or knowledge of the fiduciary.

"Second. The decedent recognized the validity and existence of the trust and his liability to account therefor up to the time of his death.

"Third. The estate came into the hands of the defendant as John Alexander's executor in the same condition as it was in when he recognized his liability to an accounting.

"Fourth. There are no rights of creditors or purchasers for value or innocent third parties intervening.

"The master found against the defendant's contention that the entries in the books of John Alexander concerning the trust funds constituted a distribution to the beneficiaries, and found that such a disposition of the trust funds constitutes in law a conversion by him of the trust funds. Counsel for the defendant argues that therefore it must be concluded that there was no trust fund in existence when John Alexander died, and con-

sequently the beneficiary was merely a creditor of the deceased trustee's estate.

"Counsel has industriously collected authorities in support of the doctrine of failure of right to pursue trust funds commingled with other property. In every case so cited an equity superior to that of the cestui que' trust was established, but in none of those cases is it held that a trustee who, without knowledge or consent of the cestui que trust, has commingled the trust funds with his own, can set up his own tortious conversion, and thereby establish a claim to the whole of the commingled property.

"In the following cases relied upon by the defendant the cestui que trust claimed a preference over the trustee's general creditors: Thompson's Appeal, 22 Pa. 16; People's Bank, 93 Pa. 107, 39 Am. Rep. 728; Freiberg v. Stoddard, 161 Pa. 259, 28 Atl. 1111; Lebanon Trust & S. D. Banks Assigned Estate, 166 Pa. 622, 31 Atl. 334; Comm. v. Tradesman's Tr. Co., 250 Pa. 372, 95 Atl. 574; Columbia Bank's Estate, 147 Pa. 422, 23 Atl. 625, 626, 628; Rado's Estate, 30 Pittsb. Leg. J. (Pa.) 410.

"And in Milligan's Appeal, 82 Pa. 389, the question was whether the trustee should be ordered to transfer to the cestui que trust certain valuable stock, purchased by the trustee out of commingled assets, instead of money. There was no evidence that the stock was purchased with her money; moreover, sufficient to satisfy the trust remained in the trustee's hands uninvested, and it was held that she was rightly awarded the money rather than the stock.

"It may be assumed that the industry of counsel would have produced authorities in support of his contention that the accountability of a trustee as against the cestui que trust ends when he commingles the trust funds with his own if there were such cases upon the books. The rule as to following trust funds, even where other equities are asserted, is thus stated by Mr. Justice Bradley in Frelinghuysen v. Nugent et al. (C. C.) 36 Fed. 229, and approved by Mr. Justice Fuller speaking for the Supreme Court in Peters v. Bain, 133 U. S. at page 693, 10 Sup. Ct. at page 361, 33 L. Ed. 696:

"'Formerly the equitable right of following misapplied money or other property into the hands of the parties receiving it depended upon the ability of identifying it, the equity attaching only to the very property misapplied. This right was first extended to the proceeds of the property, namely, to that which was procured in place of it by exchange, purchase, or sale. But if it became confused with other property of the same kind, so as not to be distinguishable, without any fault on the part of the possessor, the equity was lost. Finally, however, it has been held as the better doctrine that confusion does not destroy the equity entirely, but converts it into a charge upon the entire mass, giving to the party injured by the unlawful diversion a priority of right over the other creditors of the possessor.'

"The court's attention has not been called to any authority holding that, as against the cestui que trust, the trustee can set up his own failure to set apart trust funds, and say: 'I converted your money to my own use long ago by mixing it with my own. True, I have ample to pay you, which is the product of the commingled funds, but I do not know which is yours and which is mine. You did not consent that I should do so, nor did you know that I did so, but by converting it to my own use I made you a mere creditor and the statute of limitations has run against your claim.'

"As found by the master, the intent of the decedent to commingle the trust funds with his own was not one which the donor contemplated, nor the law sanctions, and cannot bind the cestui que trust without his consent or knowledge.

"What John Alexander did cannot be set up to the advantage of his estate to defeat the trust.

"'All that he did must be taken as in furtherance of the trust. To this he was bound by the duties of his office.' Paull v. Oliphant, 14 Pa. 350.

"In the case at bar it is shown that, while the trustee mingled the moneys of the trust estate with his own, it was done in recognition of the trust.

[7] "The finding by the master of the trustee's intention to postpone distribution under the discretion vested in him by George Jones' will until the time of his death is supported by the evidence, and is in accordance with

the maxim that, where the act of a party may be referred indifferently to one of two motives, the law prefers to refer it to that which is honest rather than that which is dishonest. Boone County Bank v. Latimer (C. C.) 67 Fed. 27.

[8] "The presumption is that in commingling the trust funds with his own, and crediting the cestui que trust on his books, John Alexander intended the joint fund to be chargeable with the trust funds, there being ample funds in the hands of his executor to meet the charge. So that where the two funds are thus blended, and the claim of the cestui que trust is not subject to any superior equities, the burden is put upon the trustee or his representative to show clearly what part of the property belongs to his estate. Perry on Trusts and Trustees, § 128; Boone County Bank v. Latimer, supra; Bank v. King, 57 Pa. 202, 98 Am. Dec. 215.

"It would be strange, indeed, if, with the presumption of a rightful intention on the part of the trustee to finally distribute the sums credited on his books to his son, and with the joint product of the commingled funds coming into the hands of the executor, the holder of the estate, thus enriched by the trust funds, should be allowed to defeat the trust by pleading a dishonest intent on the part of its decedent.

"What the plaintiff is claiming here is the right to follow his property or its value and the accrued profits into the product arising from the commingling of the trust funds with the mass of the decedent's estate.

"It was his right to elect to pursue this remedy, and an election to proceed as a mere creditor cannot be made for him by the defendant so as to invoke the statute of limitations and convert the trustee's individual dealings with him into a set-off and thus defeat the trust.

"I am of the opinion that there is no merit in the exceptions, and they will be dismissed, and the report confirmed.

"A decree may be entered accordingly."

Four appeals are before us, each presenting a separate question.

### Fidelity Trust Company's Appeal.

[9] We see no need to supplement the careful and satisfactory opinions of the District Judge except by discussing briefly the Trust Company's contention that our decision dismissing the bill, that was considered in Fidelity Trust Co. v. Alexander, 243 Fed. 162, —— C. C. A. ——, requires us to dismiss the present bill also. We think this position is not well taken. In the former case, which grew out of a family arrangement or trust in favor of the same beneficiaries, the fund then in question consisted of 60 shares of bank stock that had not been ear-marked, but formed a part of 319 shares that passed into the hands of the same executor. The beneficiaries had brought no action of any kind for about 20 years after they might have sued, and the only question before us was whether, under the circumstances there disclosed, they had lost whatever remedy in equity they might once have possessed. For a long time before the testator's death the stock had lost its identity, and the testator had apparently treated the trust fund as his own. In this respect the two cases are alike, but in the earlier case the trustee's will did not recognize the existence of the trust or propose a method of settlement. Before an account could be successfully demanded, the beneficiaries were obliged to prove the existence and survival of the trust, whereas in the present case the testator clearly recognizes the trust as existing, and empowers his executor to settle it, and the executor has accepted the authority, and has acted under it in part, as appears by the company's accounts in the orphans' court of Philadelphia county. It is a mistake to suppose that in 243 Fed. 162,

—— C. C. A. ——, we decided that the plaintiffs had never had a right to a remedy in equity. On the contrary, we assumed that they had not been confined to an action at law or to the proceeding in the orphans' court, "but could have proceeded in any other court having jurisdiction of the parties and the subject-matter"; but we laid weight upon the fact that they had taken no action of any kind until after the stock had been turned into money or had passed into other hands under the decree of the orphans' court. The point decided was that under such circumstances the claim against the estate had become a mere claim for the value of the stock and no longer needed a remedy in equity. No accounting was required, a mere calculation being sufficient. Since, therefore, the equitable remedy had not been invoked for so long a time, and had meanwhile become unnecessary, we held that the right to resort thereto had disappeared, and we restricted the plaintiffs to such other remedies as might remain, either at law or in the orphans' court.

In several particulars many of the cases now cited differ materially from the situation before us on this appeal, and therefore do not furnish the rule for decision. No conflicting rights of creditors or of purchasers for value are now involved; there is no dispute that the trust continued to the date of the testator's death, or that his estate became liable in some form of action; the assets of the trust certainly went into the executor's hands, although no one could point them out in specie, and the estate is amply solvent. In the fourth paragraph of his will the testator distinctly recognizes the trust and his liability, and in effect offers to settle with Mary and Archibald on specified terms. He had not settled with them himself, and he practically said to his executor: "I am bound to settle with Mary and Archibald for their shares of the Jones trust. The fund is somewhere in my estate; I do not know where, and I do not know how much I should pay them, but I propose to make a certain provision for each of them in full settlement of my obligation, and if they accept I leave it to you to carry the proposal into effect." No doubt he intended also to impose the settlement upon his children, but this was beyond his power. In substance, the proposal of the will had the same effect as if it had been made in his lifetime, and neither then nor after his death could he compel its acceptance. Under the trust he had exercised his right to postpone settlement until his death, but this left the task for his executor, unless the beneficiaries should see fit to accept the proposals in the will. Under such circumstances, we think a bill for an account was an appropriate, although perhaps not an exclusive, remedy, and we agree with the District Court that the present record shows no obstacle thereto.

[10] The Trust Company contends, however, that a serious obstacle is found in certain acts of Archibald after his father's death, these amounting, so it is said, to an election to take under the will. Upon this point Judge Thompson heard the evidence, and found as a result that:

"The additional evidence does not support the same conclusion (of acceptance) as to Archibald A. Alexander, and no sufficient cause is shown for disturbing as to him the findings in the opinion filed August 16, 1915."

With this we agree. Archibald has always opposed his father's will. For years he contested it in the courts, he never willingly accepted its provisions or profited by it in any degree, and in our opinion none of the acts referred to is inconsistent with this attitude of antagonism, and none requires us to hold that he made his election in favor of the will. Of course, now that the Supreme Court of Pennsylvania has adjudged the will to be valid, he is confronted with a different situation; but we do not see how this affects the conclusion that the testator, being a trustee under obligation to account, could not by his own act, without his son's consent, take away the son's right to have that obligation fulfilled in some appropriate forum. No act of Archibald was proved that amounts to an election, and, as the other objections of the Trust Company have been sufficiently answered by the district court, we need not discuss the subject further.

On the Trust Company's appeal the decree is affirmed.

### Appeal of Archibald Alexander.

[11] After the decree had been entered and the Trust Company had perfected its appeal by filing assignments of error and entering the bond for costs required by the District Court, Archibald notified the Trust Company that he would issue an execution, whereupon the company asked, and the District Court granted, an order staying the writ. From this order, which is a supplement to the decree, the present appeal is taken, and the argument is made that the stay was improperly granted because the appeal is not in form a supersedeas. The appellant's counsel contends that the well-settled practice in suits against an executor requires him to—

"plead either (1) that he never was such an executor, (2) that he has fully administered the estate, or (3) that he had only assets to a certain extent in his possession belonging to the decedent's estate. If he should fail to file any of said pleas, then, on a judgment or a decree against him, the law presumes he has a sufficiency of assets in his hands belonging to the testator with which to pay the judgment or decree against him."

Cases are cited in support of this contention, and in disputes where the limited jurisdiction of the federal courts is not an element the practice may be as argued. But in the present situation we do not think these cases are decisive. The testator's estate is still in process of settlement before the orphans' court of Philadelphia county, and we must take care to do nothing that may interfere with the distribution that belongs peculiarly to that tribunal. It may be true that the executor has abundant assets to pay the decree and all other claims that may be urged against the estate; but this we cannot certainly know, and, in order to avoid the possibility of mistake, we think we should confine the appellant, at least for the present, to the advantage he has gained by recovering the decree. He has now established his right to an account and has liquidated his claim. As it seems to us, the next step is to present the decree to the orphans' court, and if it shall there appear that the company has sufficient assets to pay the decree in full, and if the company should thereafter refuse to pay, we have no doubt the district court would permit the execution to issue. But until this shall be

done we think the order restraining execution should stand. See Yonley v. Lavender, 21 Wall. 276, 22 L. Ed. 536; Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906, 37 L. Ed. 867; Burd's Ex'r v. McGregor's Adm'r, 2 Grant, Cas. (Pa.) 365.

On the appeal of Archibald Alexander the decree is affirmed.

### Appeal of Mary Alexander.

[12] Only a few words are needed in disposing of this appeal. In the fourth paragraph of his will the testator bequeathed the sum of $15,000 for the use of his daughter Mary, declaring that this was to be in full of her interest in her grandfather's estate. In August, 1896, this sum was set apart by the orphans' court, and she accepted and has ever since enjoyed the benefit of the income therefrom. And under the eighth paragraph of the will a much larger fund has also been set apart for her use, of which she has enjoyed, and is still enjoying, the income. At the time of her father's death she was mentally competent and of full age, and her interests have been cared for by distinguished counsel. Her contention now is that, although this bill was not filed until more than 20 years after her father's death, she continues to have the right to elect whether she will take the fund of $15,000 or will insist on her right to an account for her share in the Jones estate. The answer seems plain; with knowledge of the facts or with the means of knowledge, she distinctly made her election many years ago and accepted her father's will, and she must abide by the choice she then made.

On her appeal the decree is affirmed.

### Appeal of John Alexander.

[13, 14] The appellant has not accepted his father's will, or received any benefit thereunder, but he concedes that his father paid him all that was due on the $10,000 mortgage, and confines his present claim to his share of the Underwood mortgage. Concerning this we need only say that we find no competent evidence in the record to answer the claim. We are not satisfied with the reasons given by the District Court for rejecting it. The testator could not be compelled to settle with his children in his lifetime, but, when he died without having settled voluntarily, prima facie they were all entitled to an account, and to be paid whatever should appear to be due. So far as Mary and Archibald are concerned, this presumption was strengthened by the testator's declarations (these being competent, because against his interest) that they had not been paid; but the fact that no such declaration was made with regard to John would not seriously affect the presumption that he also had not been paid. We find nothing in the record against his claim except the testator's declaration, made in the will of 1891 and repeated in the will of 1893, that "my devoted son John has years ago received from me his share of (the bequest from) his grandfather Jones's estate." Now, if this were competent evidence, we should accept it as decisive, at least in the absence of opposing evidence, but we feel bound to reject it under the well-known rule of evidence as an ex parte declaration in favor of the testator's interest,

and, there being nothing else to show that John has been paid his share of the Underwood mortgage, we must sustain the claim to an account therefor. Upon his appeal, therefore, the decree is reversed and the bill is reinstated, with directions to the District Court to take an account of his share in the $3,000 mortgage referred to.

We may add that we neither express nor intimate an opinion concerning the effect that a recovery by John and Archibald in this proceeding may have upon their claim (if any should hereafter be made) to share in a future distribution under their father's will.

On Petition of Lucien H. Alexander for Reargument.

Lucien H. Alexander, in pro. per.

PER CURIAM. [15] If we should apply the strict rules of legal procedure to this petition for a reargument, the decision would not be difficult. But the situation is peculiar; the petitioner would be affected by the decree appealed from, although he is not named therein, and, if he had asked to be heard when the appeals were originally argued in this court, we would undoubtedly have allowed him to take part. We assume that he had no actual notice (he had no record notice of the appeals), and therefore, in order to avoid a possible injustice and to afford him the opportunity to have a hearing, we have decided to grant his motion.

We direct that on or before February 5, 1918, he serve upon opposing counsel his printed brief, and such other printed matter as he may desire to present to this court; any reply thereto to be served on him on or before February 16, 1918; and the reargument to take place on February 21, 1918.

### On Rehearing.

PER CURIAM. The rehearing granted in three of these appeals has now been had, and we have carefully considered again the arguments that were presented last November, as well as the arguments that have recently been presented for the first time; but we have not been brought to see that the opinion previously filed should be modified in any respect.

It is perhaps superfluous to say that much of the prolonged litigation that has vexed John Alexander's estate is directly due to his own well-meant and kindly, but nevertheless masterful, attitude toward his children's rights under their grandfather's will. But the statement is true, and, although it will probably have little, if any, effect, it may stand as one more contribution to the mass of testimony that favors established legal rules and methods rather than individual caprice and irregularity. And so, too, in reference to rules of evidence. Having learned what kind of a man the testator was, we do not find it easy to shut our minds to the declaration in his will that he had already settled fully with John; but, if the general rule is to prevail, this declaration is not competent, and there is then no evidence concerning a settlement, except John's own admission, and this only affects the $10,000 mortgage. We feel bound to stand by the rule, and to disregard our own belief concerning the value of the testator's statement.

No change will be made in the opinion filed November 24, 1917.